UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON BOUDREAU,  :
    Plaintiff,  :
      :
v.  : No. 3:17-cv-589 (SRU)
      :
SMITH, et al.,  :
    Defendants.  :

## **INITIAL REVIEW ORDER**

The plaintiff, Jason Boudreau, incarcerated and *pro se*, has filed a complaint pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, against Agent Doug Smith, Officer Luigi Amasino, Sergeant Stanley Konesky III, Sergeant Eula, Officer Kaufman, Officer Carney, Agent James Bentz, Agent David Riccio, and Agent Brendan Cullen in their individual capacities for monetary damages. All of those defendants are employees of either the Branford Police Department ("BPD") or the United States Department of Homeland Security ("DHS"). Boudreau is suing those defendants for use of excessive force and common law assault, battery, infliction of emotional distress, and negligence. Boudreau is also suing the town of Branford, Connecticut and the BPD for supervisory liability. On April 13, 2017, the court, *Garfinkel, J.*, granted Boudreau's motion to proceed *in forma pauperis*. For the following reasons, I dismiss Boudreau's complaint in part.

    I. Standard of Review

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the

claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. Factual Allegations

On December 28, 2015, the DHS enlisted the assistance of the BPD in arresting Boudreau. DHS Agent Smith informed Sergeant Eula of the BPD that he had obtained Boudreau's GPS location by pinging his cellular telephone. Using that information, BPD officers located Boudreau's vehicle, which was unoccupied at the time, in the parking lot of 1060 West Main Street in Branford. The DHS agents and BPD officers on scene then requested the use of a canine officer to locate Boudreau himself. A short time later, BPD Officer Amasino arrived with his patrol canine named Joker. Officer Amasino permitted Joker to enter and sniff inside Boudreau's vehicle. BPD Officer Carney removed the driver side floor mat from the vehicle, which Joker then sniffed. Meanwhile, DHS had triangulated Boudreau's location using cell network technology to Branford Cue and Brew, a pool hall in Branford. DHS agents and BPD officers immediately traveled to that location.

2

Upon arrival, DHS Agents Smith, Bentz, Riccio, and Cullen, BPD Sergeants Konesky and Eula, and BPD Officers Kaufman and Carney entered Branford Cue & Brew and identified Boudreau. Boudreau was immediately handcuffed, searched, and instructed to lean against a pool table. Kaufman notified Amasino via radio that Boudreau had been detained, and Officer Amasino requested that the officers hold Boudreau at the pool hall until he and Joker arrived. The DHS Agents and BPD officers at the pool hall agreed to do so, and Boudreau remained handcuffed inside the pool hall for approximately thirty minutes.

When Amasino and Joker arrived at the pool hall, Joker nudged the door with his nose, indicating to Amasino that he wanted to enter the building. Amasino then opened the door, and Joker pulled very hard on his leash toward Boudreau, who was handcuffed and leaning against a pool table. Joker barked wildly at Boudreau. Smith, Konesky, Eula, Kaufman, Carney, Bentz, Riccio, Cullen, and Amasino permitted Joker to approach Boudreau and nudge him with his nose. Amasino then gave Joker a non-verbal, hand command, and Joker bit Boudreau on his left thigh causing him severe pain and two small lacerations. Amasino removed Joker from the immediate vicinity of Boudreau but did not inform any of the other officers or agents on scene that Boudreau had been bitten.

Boudreau told Sergeant Eula that Joker had bitten him. Eula spoke with Amasino, who suggested that photographs be taken of Boudreau's injuries. Kaufman and Eula escorted Boudreau into the men's restroom in the pool hall and took photographs of his leg. Then, they escorted him outside to the parking lot of the pool hall, where Amasino offered him medical assistance. Boudreau declined medical assistance because he was afraid of sustaining additional bodily harm from Joker, Amasino, or other BPD officers. Boudreau was then transported to

3

Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, a holding facility for DHS. There, he received medical treatment for his injuries.

On January 31, 2016, Boudreau sent written complaints to the BPD, the town of Branford, and the DHS regarding the attack by Joker. None of those recipients responded to Boudreau's complaints, conducted further investigation into the incident, or disciplined any of the officers or agents involved.

### III. Analysis

Boudreau states eleven causes of action against the defendants in this case. I will first address his claims against the DHS, BPD, and the town of Branford. Then I will address each claim as it is asserted in his complaint.

#### A. Claims Against DHS Agents

The four DHS agents being sued in this action, Smith, Bentz, Riccio, and Cullen, are federal officials. Generally, claims brought pursuant to 42 U.S.C. § 1983 are not cognizable against federal officials. *See Nghiem v. U.S. Dep't of Veterans Affairs*, 323 F. App'x 16, 18 (2d Cir. 2009) (section 1983 applies only to state actors, not federal officials). However, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), federal officials may be sued for damages in their individual capacities for the violations of a person's constitutional rights. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Although Boudreau has not separately raised a *Bivens* claim against the four DHS agents, I will construe his complaint liberally to raise a *Bivens* claim, and permit his claims against those four defendants to proceed at this time.

4

B. Claims Against the BPD and Town of Branford

"Congress did not intend municipalities to be held liable [under section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978). To prevail on a claim against a municipality under section 1983 based on the acts of a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Miron v. Town of Stratford*, 881 F. Supp. 2d 280, 284 (D. Conn. 2012) (to establish municipal liability, plaintiff must show that municipality violated federal right through municipal policy, custom, or practice or decision of municipal policymaker with final policymaking authority). A municipality cannot be held liable under section 1983 simply because one of its employees committed a tort. *Roe*, 542 F.3d at 36 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). In other words, a plaintiff cannot establish municipal liability by pointing to a single act of unconstitutional conduct by the municipality's employee or subordinate. *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012).

"[A] plaintiff may establish municipal liability by demonstrating that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Triano*, 895 F. Supp. 2d at 532 (internal quotation marks omitted). For example, "a municipality may be liable for the failure to train or supervise its employees where such a failure amounts to deliberate indifference to the risk that its employees will unconstitutionally apply its policies

5

without more training or supervision." *Id*. (internal quotation marks omitted). The Second Circuit has identified three requirements that a plaintiff must satisfy to establish municipal liability under this "failure to train theory." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation." *Id.* (internal quotation marks omitted). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.*

In this case, Boudreau alleges that the BPD and Town of Branford failed to investigate the dog bite incident or take any action against the officers involved. He, therefore, claims that both of those defendants are liable for the excessive force, assault, and infliction of emotional distress committed by their subordinates. He also claims that the BPD and Town of Branford "knew, or should have know[n]" that the officers involved in the incident "were prone to use excessive and/or unreasonable force upon civilians," "failed to implement and carry out adequate procedures to properly and adequately test, screen, evaluate, investigate and/or review [such] behaviors," permitted a policy of allowing its police officers "to use unjustifiable and excessive force upon citizens being arrested and/or in police custody," failed to train or supervise its officers, and encouraged police misconduct. Compl. at ¶¶ 128, 130, 145–47. It appears from Boudreau's complaint that all of these allegations arose from the single incident during which the police canine bit him on the leg. His allegations are entirely conclusory and unsupported by any facts suggesting that the BPD officers were acting pursuant to a well-settled policy, custom or

6

practice of unconstitutional police conduct. *See Triano*, 895 F. Supp. 2d at 533–35 (plaintiff's conclusory allegations that town "permitted, tolerated, and encouraged" pattern of illegal abuses by its police officers insufficient to state claim for municipal liability); *Miron*, 881 F. Supp. 2d at 286 (plaintiff failed to allege specific facts that town's supervision or training of police officers was inadequate). Although I must construe his complaint liberally because of his *pro se* status, Boudreau must allege more than conclusory allegations that the town and police department are liable for the unconstitutional acts of its subordinates. Thus, all claims against the BPD and the Town of Branford are hereby DISMISSED.

  C. <u>Excessive Force – First and Second Causes of Action</u>[1]

The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects. *Hemphill v. Schott*, 141 F.3d 412, 416–17 (2d Cir. 1998). To establish a Fourth Amendment excessive force claim, the plaintiff must show that the force used by the officer was "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene, *id.* at 396, and it "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417.

---

[1] Boudreau's first cause of action against all defendants is entitled, "Use of Excessive Force/Unreasonable Force." Compl. at 9. His second cause of action against the same defendants is entitled, "Intentional Deprivation of Civil Rights by Illegal Assault, Battery, and other Illegal Acts." Although stated separately, I see no difference between Boudreau's first and second causes of action. Both allege that the defendants used excessive force against Boudreau, in violation of the Fourth and Fourteenth Amendments. Thus, I will address both causes of action collectively for purposes of this order.

7

Here, Boudreau alleges that the BPD officers and DHS agents used excessive force upon him during his arrest by permitting Joker, the canine patrol dog, to get close to him and bite him on the leg while he "was handcuffed and not resisting the arrest in any way." Compl. at ¶ 74. Construing his complaint liberally, I conclude that Boudreau has stated a plausible Fourth Amendment claim against all of the individual defendants. Thus, Boudreau's Fourth Amendment excessive force claim may proceed against Smith, Amasino, Konesky, Eula, Kaufman, Carney, Bentz, Riccio, and Cullen in their individual capacities.

Boudreau also claims that the defendants' conduct constituted a violation of his Fourteenth Amendment right to due process. Compl. at ¶ 83. Because his excessive force claim is covered by the Fourth Amendment protection against unreasonable seizures, his substantive due process claim under the Fourteenth Amendment is duplicative and, therefore, subject to dismissal. *See Graham*, 490 U.S. at 395 (generalized notion of substantive due process under Fourteenth Amendment not applicable where other amendment provides explicit textual source of constitutional protection against alleged government conduct). Therefore, Boudreau's Fourteenth Amendment claim is DISMISSED.

D.  Conspiracy to Deprive Rights / Use Excessive Force – Third Cause of Action

Boudreau accuses the BPD officers and DHS agents of "conspiring to violate [his] civil rights," particularly through the use of excessive force by permitting Joker to approach him and bite him on the leg. Compl. at ¶ 88. He is, therefore, suing them pursuant to 42 U.S.C. § 1985.

Section 1985 is divided into three subsections, each with its own prohibition. Subsection (1) prohibits conspiracies to prevent federal officials from performing their duties. *Harnage v. Dzurenda*, 2014 WL 3360342, *2 (D. Conn. July 9, 2014). Subsection (2) prohibits conspiracies

8

to deter witnesses from participating in state or federal judicial proceedings. *Id.* Finally, subsection (3) prohibits conspiracies to deprive persons of equal protection of the laws. *Id.* In order to state a claim under section 1985, Boudreau must allege:

> (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege. *Importantly, the plaintiff must show that the conspiracy was motivated by a racial or otherwise class-based invidious discriminatory animus.*

*Id.* (emphasis added); *see also Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).

Here, Boudreau alleges that the defendants "conspired to violate [his] civil rights in violation of . . . [section] 1985." Compl. at ¶ 88. However, he does not allege that the conspiracy was motivated by racial or some other form of unlawful discrimination, and there is no basis in his complaint from which I reasonably can infer such a motivation. *See Sosa v. Lantz*, 2010 WL 122649, *1 (D. Conn. Jan. 5, 2010) (no arguable basis in law for plaintiff's section 1985 or 1986 claims without facts suggesting that defendant's actions were taken because of plaintiff's race or other unlawful discriminatory animus). Thus, Boudreau has not stated a claim against any of the defendants under section 1985, and those claims will be DISMISSED.

    E.    <u>Failure to Intervene / Neglect to Prevent Harm from Excessive Force – Fourth Cause of Action</u>

Boudreau alleges that the nine individual defendants "fail[ed] to prevent the . . . violations of [his] civil rights . . . in contravention to 42 U.S.C. § 1986." "Section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985. . . . Thus, a prerequisite for an actionable claim under section 1986, is a viable claim under section 1985."

9

*Harnage*, 2014 WL 3360342, *2. Because Boudreau has not stated a viable section 1985 claim, his section 1986 claim must also be DISMISSED.

    F.    <u>Common Law Assault and Battery – Fifth Cause of Action</u>

Boudreau alleges that Officer Amasino assaulted him with his patrol canine, Joker, while he was handcuffed and adhering to the officers' demands, causing him physical and psychological injuries. Pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), I can exercise supplemental jurisdiction over a state law claim such as assault if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham*, 490 U.S. at 386. As discussed above, Boudreau has stated a plausible claim of excessive force against Amasino. Because the assault and battery claim arises out of the same set of facts as the Fourth Amendment excessive force claim, I will permit the assault and battery claim to proceed at this time. *See id.* at 1073 (court should exercise supplemental jurisdiction over state common law assault claim when federal constitutional claim of excessive force and assault claim are so tightly interwoven that decision on former will collaterally estop litigation of latter). Thus, Boudreau's assault claim may proceed against Amasino in his individual capacity.

    G.    <u>Failure to Intervene / Neglect to Prevent Harm From Conspiracy – Sixth Cause of Action</u>

Boudreau next alleges that the nine individuals violated section 1986 by failing to intervene or prevent the assault committed by Amasino and his patrol dog. This claim is DISMISSED for reasons stated in Section III, E of this order.

H.       Negligent / Intentional Infliction of Emotional Distress – Seventh and Eighth Causes of Action

Boudreau is suing all defendants for either intentionally or negligently inflicting emotional distress on him by permitting Joker to bite him while he was in handcuffs. Compl. at ¶¶ 118, 122. Like the assault claim in his fifth cause of action, these claims are state law claims. To state a claim for negligent infliction of emotional distress under Connecticut law, Boudreau must allege:

> (1) that the defendant[s'] conduct created an unreasonable risk of causing [him] emotional distress; (2) [his] distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant[s'] conduct was the cause of [his] distress.

*Lavoie v. United States*, 361 F. App'x 206, 207 (2d Cir. 2010) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003)). To state a claim of intentional infliction of emotional distress, Boudreau must allege that:

> (1) the defendant[s] intended to inflict emotional distress or that [they] knew or should have known that emotional distress was the likely result of [their] conduct; (2) . . . the defendant[s'] conduct was extreme and outrageous; (3) . . . the defendant[s'] conduct was the cause of [Boudreau's] distress; and (4) . . . the resulting emotional distress sustained by [Boudreau] was severe.

*Id.* (quoting *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000)). Construing his allegations liberally, Boudreau has stated plausible claims for negligent and intentional emotional distress against the nine individual defendants. Because Boudreau has stated a plausible Fourth Amendment excessive force claim, and these emotional distress claims arose out of the same set of facts, I will exercise supplemental jurisdiction over them and allow them to proceed at this time against all nine individual defendants.

I.       Negligent Employment/Retention of Defendants/Failure to Discipline – Ninth Cause of Action

Boudreau alleges that the BPD and the town of Branford "knew, or should have know[n], that . . . Amasino, Eula, Kaufman, and Carney had violent and bully dispositions, a propensity for violence, exercised poor judgment, and were prone to use excessive and /or unreasonable force upon civilians . . . [and] failed to implement and carry out procedures to properly and adequately test, screen, evaluate, investigate, and/or review for [such] behaviors . . . ." Compl. at ¶¶ 128, 130. These allegations are entirely conclusory, and, therefore, Boudreau's negligence claim against the BPD and Town of Branford will be DISMISSED for the reasons stated in Section III, B of this order.

J.     Negligence *Per Se* – Tenth Cause of Action

Boudreau next claims that the nine individual defendants committed negligence *per se* by:

> engag[ing] in a course of conduct in the scope of their official duties as police officers and/or Homeland Security agents which resulted in . . . (a) [a]ssault and [b]attery of [Boudreau]; (b) [c]oercive and intimidat[ing] tactics; (c) [d]enying [Boudreau] due process of law; (d) [c]ruel and unusual punishment in having a police dog bite [Boudreau] while he was handcuffed; (e) [e]xcessive and/or unreasonable force by having a police dog bite [Boudreau] while he was handcuffed; (f) [n]ot giving [Boudreau] equal protection of the law; (g) [i]nflicting emotional distress upon [Boudreau]; [and] (h) [c]onspiring to violate the rights of [Boudreau].

Compl. at ¶ 136. "Under general principles of tort law, a requirement imposed by statute may establish a duty of care." *Coastline Terminals of Connecticut, Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 210 (D. Conn. 2001). "Violations of statutory standards may form the basis of a claim of negligence *per se* if the plaintiff is within the class of persons whom the statute was intended to protect and if the harm was of the type the enactment was intended to prevent." *Id*. Here,

12

Boudreau has not alleged that the defendants violated any statute, ordinance or other legislative enactment designed to protect him and/or prevent the harm that he sustained. His claim is entirely conclusory. Thus, Boudreau's negligence *per se* claim is DISMISSED.

### K. Policy, Custom, and/or Practice of Failing to Properly Train and Supervise Law Enforcement Employees – Eleventh Cause of Action

Boudreau's final claim is against the BPD and the town of Branford for implementing a "policy, custom and/or practice" of allowing its police officers to use excessive force, failing to investigate citizen complaints, failing to discipline police officers, and employing police officers who engage in unlawful behavior. These allegations are entirely conclusory and will be DISMISSED for the reasons stated in Section III, B of this order.

## IV. Conclusion

(1) All claims against the BPD and the Town of Branford, including the ninth and eleventh causes of action, are **DISMISSED**. Boudreau's Fourteenth Amendment claim, negligence *per se* claim, and his section 1985 and 1986 claims (Third, Fourth, Sixth, and Tenth Causes of Action) are **DISMISSED**. His Fourth Amendment excessive force claim and state law claims of negligent infliction of emotional distress, and intentional infliction of emotional distress (First, Second, Seventh, and Eighth Causes of Action) may proceed against Smith, Amasino, Konesky, Eula, Kaufman, Carney, Bentz, Riccio, and Cullen in their individual capacities. Boudreaus's state law assault claim (Fifth Cause of Action) may proceed against Amasino in his individual capacity.

(2) The Clerk shall verify the current work addresses for Smith, Amasino, Konesky, Eula, Kaufman, Carney, Bentz, Riccio, and Cullen, mail a waiver of service of process request packet containing the complaint to each defendant at the confirmed address within **twenty-one**

**(21) days** of this Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Smith, Amasino, Konesky, Eula, Kaufman, Carney, Bentz, Riccio, and Cullen shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them**. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed **within six months (180 days) from the date of this order**. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed **within seven months (210 days) from the date of this order**.

SO ORDERED at Bridgeport, Connecticut this 12th day of July 2017.

/s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge