UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON BOUDREAU,
    Plaintiff,

v.                                    Case No. 3:17-cv-589 (SRU)

DOUG SMITH, et al.,
    Defendants.

## RULING ON MOTION TO DISMISS

On April 10, 2017, Jason Boudreau, a federal inmate currently confined at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, filed a civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against the town of Branford, Connecticut, the Branford Police Department ("BPD"), five members of the BPD, and four members of the United States Department of Homeland Security ("DHS") for using excessive force during his arrest, in violation of his Fourth Amendment protection against unreasonable seizures. Doc. No. 1. Boudreau also raised several tort claims against the defendants, including assault, battery, and intentional and negligent infliction of emotional distress. On July 12, 2017, I issued my Initial Review Order dismissing all claims against the town of Branford and the BPD. Doc. No. 9. I permitted, however, Boudreau's Fourth Amendment excessive force claim and state law claims of intentional and negligent infliction of emotional distress to proceed against the individual BPD officers and DHS agents. *Id.* I also permitted his state law assault claim to proceed against one of the BPD officers, Officer Amasino. *Id.*

On October 16, 2017, Boudreau filed an amended complaint (Doc. No. 22-1) limiting his claims to those I permitted in the Initial Review Order. In his amended complaint, he brings claims against the five BPD officers: Officer Luigi Amasino, Sergeant Konesky III, Sergeant Eula, Officer Kaufman, and Officer Carney (collectively "the BPD defendants"); and the four

DHS agents: Agent Doug Smith, Agent James Bentz, Agent David Riccio, and Agent Brendan Cullen (collectively "the federal defendants"), in their individual capacities for damages. On December 11, 2017, Boudreau stipulated to the dismissal with prejudice of all claims against the BPD defendants. Stipulation of Dismissal, Doc. No. 39. Thus, the only remaining claims are those brought against the federal defendants in their individual capacities for excessive force, intentional infliction of emotional distress, and negligent infliction of emotional distress.

On December 4, 2017, the federal defendants moved to dismiss Boudreau's claims against them on two grounds. Mot. to Dismiss, Doc. No. 36. First, they argue that the tort claims for intentional and negligent infliction of emotional distress should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Boudreau has not sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), nor has he sued them in their official capacities. Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), Doc. No. 36-1 at 3. Second, they argue that the excessive force claim should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because (1) two of them, Smith and Bentz, had no personal involvement in Boudreau's arrest, (2) they did not utilize excessive force against Boudreau and had no realistic opportunity to prevent the alleged use of excessive force, and (3) they are entitled to qualified immunity. *Id.* at 4.

Boudreau counters that his case complies with the principles of the FTCA, and therefore, I can exercise jurisdiction over the tort claims. Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Mem."), Doc. No. 43 at 32-34. He acknowledges, however, that if I disagree with his jurisdictional argument, I should dismiss the tort claims and allow the case to proceed on the excessive force claim. *See id.* at 34. Boudreau argues that dismissal of the excessive force claim

2

is improper because the federal defendants are essentially asking me to weigh the evidence and evaluate the merits of his claim. *Id.* at 35. For the following reasons, the federal defendants' Motion to Dismiss (Doc. No. 36) is **GRANTED in part and DENIED in part**.

I. Standard of Review

"A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), considers whether the court lacks constitutional authority to adjudicate the suit." *Elliot v. United States*, 2007 WL 2022044, at *1 (D. Conn. Jul. 6, 2007). Although I must accept as true all material facts in the complaint, I cannot draw from the complaint "inferences favorable to the party asserting [jurisdiction]." *Id.* (quoting *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). As the party asserting jurisdiction, Boudreau bears the burden of proving by a preponderance of the evidence that I have jurisdiction over his claims. *See id.*; *Allegrino v. Sachetti*, 2015 WL 3948986, at *2 (D. Conn. June 29, 2015) (to survive 12(b)(1) motion, plaintiff must prove by preponderance of evidence that jurisdiction exists). "Courts evaluating Rule 12(b)(1) motions 'may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'" *Elliot*, 2007 WL 2022044, at *1 (quoting *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when . . . plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct

3

alleged." *Id.* The plausibility standard is not a probability requirement; the complaint must show, not merely allege, that Boudreau is entitled to relief. *See id.* "Where . . . the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

When reviewing a motion to dismiss under Rule 12(b)(6), I must accept as true all of the facts alleged in the amended complaint and draw all reasonable inferences in Boudreau's favor. *Ashcroft*, 556 U.S. at 678; *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). This principle does not, however, apply to the legal conclusions that Boudreau draws in his amended complaint. *Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp.*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. In deciding a 12(b)(6) motion, I "may consider only 'the facts as asserted within the four corners of the [amended] complaint, the documents attached to the [amended] complaint as exhibits, and any documents incorporated in the [amended] complaint by reference.'" *Allegrino*, 2015 WL 3948986, *3 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)).

II. Factual Allegations

Boudreau alleges the following facts in his amended complaint. On December 28, 2015, DHS Agent Smith requested assistance from the BPD in arresting Boudreau. Am. Compl. ¶ 15. DHS Agent Smith informed Sergeant Eula of the BPD that he had obtained Boudreau's GPS location by pinging his cellular telephone. *Id.* at ¶ 16. Using that information, BPD officers located Boudreau's vehicle, which was unoccupied at the time, in the parking lot of 1060 West

4

Main Street in Branford. *Id.* at ¶ 17. The DHS agents and BPD officers on scene then requested the use of a canine officer to locate Boudreau. *Id.* at ¶ 18. A short time later, BPD Officer Amasino arrived with his patrol canine named Joker. *Id.* at ¶ 19. Joker was fifteen months old at the time and had been certified by the Connecticut State Police as a patrol dog. *Id.* at ¶¶ 20, 21. Amasino and Officer Carney permitted Joker to enter and sniff inside Boudreau's vehicle. *Id.* at ¶¶ 23, 26. Meanwhile, BPD and DHS using cell network technology had triangulated Boudreau's location to Branford Cue & Brew, a pool hall in Branford. *Id.* at ¶ 27. DHS agents and BPD officers immediately traveled to that location, but Amasino "still chose to use . . . Joker to track [Boudreau]." *Id.* at ¶¶ 28, 29.

Upon arrival, the federal defendants and BPD members Konesky, Eula, Kaufman, and Carney entered Branford Cue & Brew and identified Boudreau. Am. Compl. ¶ 31. Boudreau was immediately handcuffed, searched, and instructed to lean against a pool table. *Id.* at ¶¶ 31-32. Kaufman notified Amasino via radio that Boudreau had been detained, and Officer Amasino requested that Boudreau remain at the pool hall until he and Joker arrived. *Id.* at ¶¶ 32-33. The DHS Agents and BPD members acquiesced to Amasino's request, and Boudreau remained handcuffed inside the pool hall for approximately thirty minutes. *Id.* at ¶¶ 34-35.

When Amasino and Joker arrived at the pool hall, Boudreau noticed that Joker was not wearing a muzzle, contrary to what was later reported by the BPD officers. Am. Compl. ¶ 36. The police body camera video[1] shows that Joker "appeared confused and . . . did not pull toward [Boudreau] at all . . . ." *Id.* at ¶ 37. Amasino asked Carney, "[w]here is the dude?" and then

---

[1] I may rely on the police body camera videos (Defs.' Ex. K) for purposes of this motion to dismiss because Boudreau has incorporated them by reference in his amended complaint. *See Urena v. American Airlines, Inc.*, 2004 WL 2212095, at *2 n.1 (E.D.N.Y. Sep. 16, 2004) (policies and procedures referenced in complaint may be considered in deciding a motion to dismiss).

5

repeatedly asked Joker, "[w]here is he?" *Id.* at ¶ 39. The federal defendants and BPD officers then allowed Joker to approach Boudreau, who was handcuffed. *Id.* at ¶ 40. The video shows that Joker at first appeared unable to locate Boudreau, but Amasino repeatedly asked him, "[w]here is he buddy?" *Id.* at ¶ 41. Carney told Amasino that Joker "look[ed] like he want[ed] to bite the shit out of someone."[2] *Id.* at ¶ 42.

When Joker finally located Boudreau, he nudged Boudreau's legs with his nose. Am. Compl. ¶ 43. Boudreau noticed that Joker looked confused and feared having him so close to him. *Id.* at ¶ 44. He asked Amasino if Joker was still in training, to which Amasino responded that he was not. *Id.* at ¶ 46. Joker then bit Boudreau on his left thigh, resulting in two small lacerations above his knee and "severe pain."[3] *Id.* at ¶¶ 47, 49, 52. None of the federal defendants or BPD officers attempted to prevent Joker from approaching Boudreau. *Id.* at ¶ 48. Amasino immediately removed Joker from the vicinity of Boudreau but did not inform any of the other officers or agents on scene that Boudreau had been bitten. *Id.* at ¶¶ 54, 58.

Boudreau told BPD Officer Kaufman that Joker had bitten him and that he was in pain. Am. Compl. ¶ 59. However, the video shows that "none of the officers appear[ed] at all concerned that [Boudreau] was bitten, and at times, they laugh[ed] and joke[d] about it." *Id.* at ¶ 60. When Kaufman notified Amasino that Joker had bit Boudreau, Amasino replied, "I don't give a fuck." *Id.* at ¶ 61. He also referred to Boudreau as the "fucking guy" and said "good dog" to Joker. *Id.* at ¶¶ 62-63. Amasino instructed Kaufman to take photographs of Boudreau's injury. *Id.* at ¶ 64. Afterward, officers escorted Boudreau outside to the parking lot of the pool

---

[2] The police body camera footage shows that this statement was not made until after the dog bit Boudreau on the leg.
[3] The body camera footage of the incident shows that Boudreau showed no visible or audible reaction

hall, where Amasino offered him medical assistance. *Id.* at ¶¶ 67-69. Boudreau declined medical assistance because he was afraid of sustaining additional bodily harm from Joker, Amasino, or other BPD officers. *Id.* at ¶ 70. Boudreau was then transported in a DHS vehicle to the Donald W. Wyatt Detention Facility where he received medical treatment for his injuries. *Id.* at ¶¶ 71-72.

III. Analysis

    *a. Intentional and Negligent Infliction of Emotional Distress*

The federal defendants first argue that I do not have jurisdiction over Boudreau's tort claims of intentional and negligent infliction of emotional distress because they were acting in the scope of their duties as federal officers and Boudreau did not properly sue the United States government under the FTCA. They further contend that, even if I were to substitute the United States as the defendant to the action, the claims would still be subject to dismissal because Boudreau failed to exhaust his administrative remedies under the FTCA. I agree and dismiss the tort claims.

The doctrine of sovereign immunity bars suits against the United States and its agencies. *Pimentel v. Deboo*, 411 F. Supp. 2d 118, 126 (D. Conn. 2006) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). "Sovereign immunity is jurisdictional in nature. Thus, without a waiver of immunity, a district court lacks jurisdiction to entertain a case against the federal government or its agencies." *Id.* A waiver of sovereign immunity must be express and unequivocal. *Id.*

In enacting the FTCA, Congress waived sovereign immunity for claims against the United States arising out of torts committed by its employees acting in the course of their duties. *See B & A Marine Co., Inc. v. American Foreign Shipping Co., Inc.*, 23 F.3d 709, 712 (2d Cir.

---

immediately after the dog bite.         7

1994); *Toomer v. County of Nassau*, 2009 WL 1269946, at *11 (E.D.N.Y. May 5, 2009). The FTCA provides, in relevant part:

> [t]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Although the FTCA does not apply to suits for violations of federal constitutional or statutory rights, it does provide federal employees with immunity against nonconstitutional tort claims. *See Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991); *see also Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("a claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA").

A nonconstitutional tort claim under the FTCA can only be brought against the United States, not against federal employees individually. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 372 (E.D.N.Y. 2005). Thus, 28 U.S.C. § 2679(d) "requires that the United States be substituted as *the* party defendant upon certification by the Attorney General or the court that the defendant employee was acting within the scope of his employment." *B & A Marine Co., Inc.*, 23 F.3d at 713. A court's ruling that the government employee defendants were acting within the scope of their employment sufficiently complies with this certification requirement. *See id.* at 715-16; *see also Williams v. Metro. Detention Ctr.*, 418 F. Supp. 2d 96, 102 (E.D.N.Y. 2005) (court may deem complaint to name United States as defendant in FTCA claim).

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). In order to bring suit under the FTCA, the claimant must first present his claims to the appropriate federal agency within two years of accrual. *Toomer*, 2009 WL 1269946, at *11. Administrative claims under the FTCA "shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident . . . ." 28 C.F.R. § 14.2(a). The claimant's claims "must be denied in writing before [he] may file suit in federal court." *Toomer*, 2009 WL 1269946, at *11. Failure to comply with the exhaustion requirement results in dismissal of the suit. *Id.* "Because this requirement is jurisdictional, the subsequent denial of an administrative claim cannot cure a prematurely filed FTCA action." *Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 310 (E.D.N.Y. 2008).

In this case, Boudreau has brought two common law tort claims against four individual federal government employees. The federal defendants have submitted evidence that they were acting in the scope of their employment during Boudreau's arrest; Certification of Scope of Employment Under 28 U.S.C. § 2679(d), Defs.' Ex. F, Doc. No. 36-7; and Boudreau does not dispute that evidence. Because those two claims are not constitutional in nature and Boudreau seeks damages against the federal defendants, the FTCA provides the only avenue through which he may obtain relief. *See Castro*, 34 F.3d at 110 ("a claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA"). Thus, in order for those claims to proceed, I

9

would be required to substitute the United States as the defendant to the action because the federal defendants, as individual employees, would be immune from damages under the FTCA. *See B & A Marine Co., Inc.*, 23 F.3d at 713, 715-16.

Even if I were to substitute the United States as the defendant, however, Boudreau's tort claims would still be subject to dismissal if he did not properly exhaust his administrative remedies under the FTCA. *See McNeil*, 508 U.S. at 113. The federal defendants have submitted a declaration from a legal advisor in the litigation division of DHS stating that there is no record of any administrative claim from Boudreau prior to the initiation of the instant case. Decl. of Jonathan Kaplan, Defs.' Ex. G, Doc. No. 36-8. That same legal advisor declared that, in October of 2017, nearly two years after Boudreau's arrest, he received a letter from Boudreau dated January 12, 2016 stating Boudreau's intent to sue the DHS "for civil rights violations during [his] arrest on December 29, 2015 in Branford, Connecticut." *Id.* In that letter, Boudreau stated his intention to sue DHS under the FTCA for several claims, including "negligence" and intentional infliction of emotional distress and his willingness to resolve the matter out of court. *Id.* Boudreau argues that this letter sufficiently satisfies the FTCA exhaustion requirement. *See* Pl.'s Mem. at 32.

The federal defendants correctly point out, however, that Boudreau's letter fails to comply with 28 C.F.R. § 14.2(a). Defs.' Ex. G ¶ 4. It does not include "a sum certain for injury to or loss of . . . personal injury alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). Courts have dismissed FTCA claims as unexhausted for failure to comply with that provision. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 190 (2d Cir. 1999) (letter sent to federal agency demanding return of property but lacking claim for sum certain "did not

constitute the filing of a formal administrative claim for FTCA purposes"); *Czetwertynski v. United States*, 514 F. Supp. 2d 592, 596 (S.D.N.Y. 2007) (letters from plaintiff to federal agency lacking demand for money damages in sum certain requires dismissal for failure to exhaust administrative remedies under FTCA). Although Boudreau expressed in his letter a willingness to resolve the matter out of court, he placed the onus of doing so on the agency rather than instituting an administrative action himself. *See* Defs.' Ex. G ("If you would like to resolve this matter out of court, you may contact me by January 31, 201[6]. If you do not contact me to resolve the matter, then I will file a civil lawsuit against your agency and your agents that were at the scene in the United States District Court . . . ."). Because it is Boudreau's responsibility to exhaust his administrative remedies under the FTCA before filing suit against the United States, and not the agency's responsibility, his letter does not satisfy the jurisdictional requirement.

Based on the foregoing, I agree with the federal defendants that Boudreau has failed to exhaust his administrative remedies under the FTCA before raising his tort claims in federal court. Therefore, the Federal Defendant's Motion to Dismiss is **GRANTED** with respect to Boudreau's claims of intentional and negligent infliction of emotional distress. Accordingly, Boudreau's nonconstitutional tort claims against the federal defendants for intentional and negligent infliction of emotional distress are dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

      *b. Failure to Intervene*

The only remaining claim in this case is against the federal defendants for failing to intervene when BPD officers utilized excessive force upon Boudreau during his arrest, in violation of his Fourth Amendment protection against unreasonable seizures. I have jurisdiction

to review that claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), because it is a constitutional claim against federal officers in their individual capacities for damages.

The federal defendants contend that the *Bivens* claim should be dismissed under Rule 12(b)(6) because (1) two of them, Smith and Bentz, had no personal involvement in Boudreau's arrest, (2) they had no realistic opportunity to prevent the alleged use of excessive force, and (3) they are entitled to qualified immunity. Defs.' Mem. at 4. Boudreau argues that the federal defendants are essentially asking me to "weigh the evidence," which is improper in deciding a 12(b)(6) motion. I agree with Boudreau and **DENY** the motion to dismiss the excessive force claim.

With respect to their first argument, the federal defendants have submitted documentation showing that Smith and Bentz had no personal involvement in Boudreau's arrest. *See* Defs.' Ex. H & I, Doc. Nos. 36-9, 36-10. However, when ruling on a 12(b)(6) motion, I am not permitted to look beyond the four corners of the complaint unless the document is attached to the complaint as an exhibit or incorporated into the complaint by reference. *Allegrino*, 2015 WL 3948986, at *3. The documentation upon which the federal defendants rely, specifically Smith's and Bentz's declarations, are neither attached to nor incorporated in Boudreau's amended complaint.[4] Although the federal defendants may rely on such evidence in a summary judgment motion, I cannot rely on such evidence for purposes of this motion to dismiss.[5]

---

[4] By contrast, the police body camera videos are incorporated by reference in the amended complaint, and therefore, I can review the footage for purposes of the motion to dismiss. *See supra* note 1.

[5] The Second Circuit has held that "[w]hen a motion to dismiss presents material outside the pleadings, a district court may convert the motion into one for summary judgment provided that the non-moving party receives notice and an opportunity to respond." *Cancel v. Amakwe*, 551 F. App'x 4, 5 (2d Cir. 2013). Moreover, Fed. R. Civ. P. 12(d) provides that if matters outside the pleadings are presented to and not excluded by the district court on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56 [and] [a]ll parties

With respect to the federal defendants' second and third arguments, I do not agree that Boudreau has failed to state a claim of excessive force or that the federal defendants failed to intervene to prevent such force.

"The Fourth Amendment prohibits officers from using excessive force when arresting criminal suspects." *Maye v. Vargas*, 638 F. Supp. 2d 256, 261 (D. Conn. 2009). "Police officers also have an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in their presence by other officers." *Id.* (internal quotations omitted). An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer has reason to know that (1) excessive force is being used, (2) a citizen has been unjustifiably arrested, and (3) any constitutional violation has been committed by a law enforcement officer. *Id.* (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson*, 17 F.3d at 557. "Whether an officer had a 'realistic opportunity to intervene . . . is a question of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Id.*

In this case, Boudreau alleges that the federal defendants and the BPD defendants requested the use of a canine officer to locate him. Am. Compl. ¶ 18. After locating Boudreau and placing him in custody, the federal defendants and BPD officers agreed to wait with him

---

must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See also Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999) (vigorous enforcement of conversion requirement ensures that courts will not engage in fact-finding when ruling on motion to dismiss and that plaintiffs are given fair chance to contest defendants' evidence). Rule 56 requires that parties be given at least ten days' notice before converting a 12(b)(6) motion to a motion for summary judgment. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983). Such notice is particularly important when a party is proceeding *pro se* and may not be aware of the consequences of his failure to offer evidence to contradict that of the other party. *Id.* Because Boudreau, who is proceeding *pro se*, may have been unaware of the conversion requirements and I have already granted part of the motion to dismiss, I decline to convert the instant motion into a summary judgment motion at this time.

until Officer Amasino arrived with the canine, Joker. *Id.* at ¶ 34. The federal defendants and BPD officers permitted Joker to approach Boudreau while he was handcuffed despite the fact that Joker "looked confused," and then Joker bit him on the leg. *Id.* at ¶¶ 43, 44, 47. According to Boudreau, "the police body camera video shows that the [d]efendants were in such close proximity to [him] that they could have prevented the dog bite." *Id.* at ¶ 111. The video footage shows several officers surrounding Boudreau when Officer Amasino arrived with Joker, but it is not clear from the footage which of the federal defendants, if any, were present at that time. For purposes of ruling on this motion, I will accept as true Boudreau's allegation that all federal defendants were present during the incident.

The failure to intervene claim can usefully be divided into two parts: (1) failure to intervene by preventing Joker from approaching Boudreau; and (2) failure to intervene to prevent Joker from biting Boudreau.

I agree with the defendants' assertion that a jury could not reasonably infer from Boudreau's allegations and the camera footage that the federal defendants had a realistic opportunity to intervene once the dog had begun to attack Boudreau. "Often it is impossible for an officer to have a reasonable opportunity to intervene if the alleged use of force was quick and isolated." *Gonzalez v. Waterbury Police Dept.*, 199 F. Supp. 3d 616, 623 (D. Conn. 2016). *See also O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (three blows to plaintiff's head occurred in such rapid succession that officer had no realistic opportunity to intervene to prevent harm); *Parks v. Segar*, 2012 WL 4051833, at *4 (D. Conn. Sept. 13, 2012) (jury could not reasonably conclude that officer had reasonable opportunity to intervene to prevent dog bite which lasted for "half a second to a second"); *Johnson v. City of New York*, 2008 WL 4450270,

14

at *6 (S.D.N.Y. Sep. 29, 2008) (officer had no reasonable opportunity to intervene when alleged use of force lasted only "a couple of seconds"). The camera footage in this case shows that the dog bite lasted maybe one second and that the officers removed the dog immediately thereafter, preventing any further injury.

Boudreau claims, however, that the federal defendants' decision to permit the dog to approach him in the first instance, after he was already in handcuffs and compliant with the arrest, should have prompted them to intervene. *See* Pl.'s Mem. at 27. It is this issue upon which Boudreau premises his excessive force claim. Accepting as true his allegations that the federal defendants were near him during the incident and agreed to keep him confined in the restaurant until after the canine Joker could finish tracking him, I conclude that Boudreau has stated a plausible claim for failure to intervene. *See Sanabria v. Detective Shawn Tezlof*, 2016 WL 4371750, at *6 (S.D.N.Y. Aug. 12, 2016) (plaintiff's allegations that officers were present during arrest when violation occurred sufficient for failure to intervene claim to proceed); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 725 (S.D.N.Y. 2015) (failure to intervene claim may proceed to discovery because plaintiff alleged constitutional violations and presence of multiple officers during arrest); *Oliphant v. Villano*, 2011 WL 3902741, at *2 (D. Conn. Sept. 6, 2011) (allegation that officers were present during false imprisonment sufficient at motion to dismiss stage to plead failure to intervene). Although somewhat tenuous when analyzed with the videos, I conclude that Boudreau's allegations are sufficient at this stage for the failure to intervene claim to proceed to discovery.[6]

---

[6] Boudreau argues in his opposition that the federal defendants knew that Joker was a "bite and hold" German Shepard and that he had been deployed for the purpose of finding and "seizing" Boudreau. *See* Pl.'s Mem. at 6-8, 10, 36. He did not, however, make this allegation in his amended complaint, and he "may not . . . amend the amended complaint in a memorandum in opposition to a motion to dismiss." *Tyus v. Newton*, 2015 WL 1471643, at

The federal defendants contend that the mere use of a police dog, even after Boudreau was in custody, does not show that they intended, or had reason to know, that the dog would bite him, and therefore, they are entitled to qualified immunity on the excessive force claim. Defs.' Mem. at 24 n.8. I do not agree.

"A government official sued in his individual capacity is entitled to qualified immunity if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct, or if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Jones*, 285 F. Supp. 2d at 183 (citing *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65-66 (2d Cir. 1999)). "In other words, 'the unlawfulness must be apparent.'" *Id.* (quoting *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir. 1999)). "Qualified immunity adds the 'further dimension' in excessive force cases that police officers will be protected when there is a lack of clarity as to the proper application of legal doctrine to the facts at hand." *Maye*, 638 F. Supp. 2d at 261-62 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

In this case, Boudreau alleges that the federal defendants continued to allow the canine to track and locate him after he was placed in custody, and they permitted the canine to get close to Boudreau even though he was handcuffed and did not pose any threat to the safety of the officers present. Although it is unclear at this stage of the proceeding whether such conduct constitutes excessive force, I cannot conclude that the federal defendants are entitled to qualified immunity

---

*5 (D. Conn. Mar. 31, 2015); *see also Walia v. Napolitano*, 986 F. Supp. 2d 169, 184 (E.D.N.Y. 2013) ("Plaintiff cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss"). There are no facts in the amended complaint that would support an inference that the dog was used for any purpose other than to track and identify Boudreau. Thus, although I am permitting his failure to intervene claim to proceed to discovery, I do not accept this allegation as true because it is not pleaded in the amended complaint.

without further factual development. There remain several unresolved factual disputes bearing on the issue whether the federal defendants acted reasonably during the arrest such as whether they were even present during the incident, their involvement, if any, in the decision to permit the canine to approach the handcuffed Boudreau, and whether such conduct is standard law enforcement procedure. *See Maye*, 638 F. Supp. 2d at 262 ("Although qualified immunity is a question of law, because issue of reasonableness depends on the facts of the situation, if there is a dispute as to the facts, that must be resolved by the factfinder before qualified immunity can be granted"). As the federal defendants point out, there are several cases that have rejected similar failure to intervene claims, but those were decisions or reviews of decisions on summary judgment motions, following the discovery of additional evidence. *See id.* at 263 (granting summary judgment because jury reasonably could not conclude that officer had realistic opportunity to intervene); *Parks*, 2012 WL 4051833, at *4 (same); *Cardona v. Connolly*, 361 F. Supp. 2d 25, 32-34 (D. Conn. 2005) (dog bite did not constitute excessive force because officer did not intentionally use dog to bring about seizure); *White v. Harmon*, 65 F.3d 169, at *3 (6th Cir. 1995) (defendant officers entitled to qualified immunity against claim that they permitted dog to complete tracking of plaintiff who was already subdued). Therefore, I do not conclude at this stage of the proceeding that the federal defendants are entitled to qualified immunity on Boudreau's constitutional claim. Accordingly, the federal defendants' motion to dismiss is **DENIED** with respect to Boudreau's claim of failure to intervene.

IV. Conclusion

Based on the foregoing, the federal defendants' Motion to Dismiss (Doc. No. 36) is **granted** with respect to Boudreau's claims of intentional and negligent infliction of emotional distress, but **denied** with respect to Boudreau's claims of failure to intervene.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge