# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON BOUDREAU, | : |
|     Plaintiff, | : |
| | : |
| v. | :   Case No. 3:17-cv-589 (SRU) |
| | : |
| DOUG SMITH, et al., | : |
|     Defendants. | : |

## RULING ON MOTIONS FOR PROTECTIVE ORDER

On April 10, 2017, Jason Boudreau, a federal inmate currently confined at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, filed a civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against the town of Branford, Connecticut, the Branford Police Department ("BPD"), five members of the BPD, and four members of the United States Department of Homeland Security ("DHS") for using excessive force during his arrest, in violation of his Fourth Amendment protection against unreasonable seizures. He also raised several state law tort claims against the defendants, including assault, battery, and intentional and negligent infliction of emotional distress. I dismissed all claims against the town of Branford and the BPD and all state law tort claims. Initial Review Order, Doc. No. 19, at 13; Stipulation of Dismissal, Doc. No. 39; Ruling on Mot. to Dismiss, Doc. No. 50. The only remaining claim in this case is a Fourth Amendment claim for excessive force against the four DHS officers, Doug Smith, James Bentz, David Riccio, and Brendan Cullen, based on their decision to permit a police dog to approach Boudreau while he was handcuffed and detained, after which the dog bit Boudreau on the leg. *See* Ruling on Mot. to Dismiss at 15.

On October 18, 2018, defendant Cullen, filed a motion for a protective order with respect to 105 Requests for Admissions that Boudreau had served upon him one week earlier. Def. Cullen's Mot. for Protective Order, Doc. No. 54. On December 19, 2018, defendant Riccio filed

a similar motion with respect to 100 Requests for Admissions that Boudreau had served upon him. Def. Riccio's Mot. for Protective Order, Doc. No. 56.[1] Both defendants argue that the two sets of requests are excessive in number and that many of them are vague and/or seek factual information that is not relevant to the sole remaining claim in this case. Def. Cullen's Mem. in Supp. of Mot. for Protective Order, Doc. No. 54-1; Def. Riccio's Mem. in Supp. of Mot. for Protective Order, Doc. No. 56-1. Boudreau counters in his written objections that the Requests for Admissions are not vague or overly burdensome, and they seek relevant information. Pl.'s Resp. to Cullen's Mot. for a Protective Order, Doc. No. 55; Pl.'s Resp. to Riccio's Mot. for a Protective Order, Doc. No. 57. The parties assert that they have been unable to resolve these discovery disputes informally. For the following reasons, I will **GRANT** both motions.

"Because the liberality of pretrial discovery has a significant potential for abuse, courts may issue protective orders which restrict permissible discovery if it would unduly annoy or burden the other party." *Joseph L. v. Connecticut Dept. of Children and Families*, 225 F.R.D. 400, 401 (D. Conn. 2005) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). I have broad discretion regarding whether to issue a protective order. *Id.* (citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)). Rule 26(c) of the Federal Rules of Civil Procedure provides that a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." If good cause is shown, I may "issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P.

---

[1] Riccio notes in his supporting memorandum that Boudreau has served 45 Requests for Admissions on defendant Bentz and 49 Requests for Admissions on defendant Smith. Def. Riccio's Mem. in Supp. of Mot. for Protective Order, Doc. No. 56-1, at 2. Bentz has provided Boudreau with responses to his requests, and Smith is in the process of preparing responses to the requests served on him. *Id.*

26(c); *see also Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (moving party bears burden of establishing good cause for protective order). "Good cause is established when [the moving] party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order." *Qube Films Ltd.*, 2015 WL 109628, at *2 (internal quotations omitted).

Requests for Admissions are not discovery tools in the traditional sense. *Brodeur v. McNamee*, 2005 WL 1774033, at *2 (N.D.N.Y. July 27, 2005). "While discovery mechanisms such as requests for document production, interrogatories, and depositions typically seek to uncover information for use in pursuing or defending against a litigated claim, requests for admissions serve the distinctly different purpose of assisting the parties and the court to narrow the factual issues to be presented for determination in connection with such a claim, either on motion or at trial." *Id.* The party requesting the admission "bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without explanation, and in certain instances, permit a qualification or explanation for purposes for clarification." *Dash v. Seagate Technology (US) Holdings, Inc.*, 2015 WL 4257329, at *16 (E.D.N.Y. July 14, 2015) (quoting *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003)).

In this case, Cullen and Riccio have satisfied their burden of showing good cause for the issuance of a protective order. Many of the requests for admissions Boudreau has served on those two defendants are vague and seek discovery of information that is irrelevant and well beyond the scope of the sole remaining excessive force claim. Some of those vague and irrelevant requests include, but are not limited to, the use of cellular technology to track

Boudreau's location, the policies and procedures of detaining suicidal individuals, Cullen's and Riccio's record and training as law enforcement officers, whether Cullen and Riccio have used canines to track suspects in other cases, whether Riccio "took notes of any kind during [Boudreau's] arrest," the type of clothing Cullen and Riccio were wearing during the arrest, and whether the defendants "made any phone calls" while inside the restaurant. Pl.'s First Request for Admissions to Def. Brendan Cullen, Doc. No. 54-2; Pl.'s First Request for Admissions to Def. David Riccio, Doc. No. 56-2. Boudreau fails to explain how any of this information is relevant to the defendants' decision or participation in the decision to allow the canine to approach him after he was handcuffed. *See Brodeur*, 2005 WL 1774033, at *3 (requests for admissions extend beyond scope of relevant discovery). Some of the requests also seek opinions or conclusions from the defendants, rather than admissions of fact. *See, e.g.*, Pl.'s First Request for Admissions to Def. David Riccio, Request No. 57 ("Admit that [Boudreau] deserved to be bitten by Canine Joker"). Such requests are improper for discovery purposes. *See Dash*, 2015 WL 4257329, at *16 (requests for admissions should be stated in manner allowing for simple admit or deny response without explanation). Good cause, therefore, exists to protect Cullen and Riccio from the undue burden of responding to the current Requests for Admissions.

The motions for a protective order, Doc. Nos. 54 and 56, are **GRANTED**. Boudreau may resubmit new sets of Requests for Admissions on Cullen and Riccio. The Requests must be concise and seek only factual information limited to the sole remaining excessive force claim in this case.

So ordered.

Dated at Bridgeport, Connecticut, this 6th day of May 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge