## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON BOUDREAU, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:17-cv-589 (SRU) |
| | : | |
| SMITH, ET AL., | : | |
| Defendants. | : | |

## RULING ON PENDING MOTIONS

On April 10, 2017, Jason Boudreau, a federal inmate currently confined at the Donald W.

Wyatt Detention Facility in Central Falls, Rhode Island, filed a civil rights complaint *pro se*

pursuant to 42 U.S.C. §1983 against the town of Branford, Connecticut, the Branford Police

Department ("BPD"), five members of the BPD, and four members of the United States

Department of Homeland Security ("DHS") for using excessive force during his arrest, in

violation of his Fourth Amendment protection against unreasonable seizures. He also raised

several state-law tort claims against the defendants, including assault, battery, and intentional

and negligent infliction of emotional distress. All claims against the town of Branford and the

BPD and all state-law tort claims were dismissed. Initial Review Order, Doc. No. 19 at 13;

Stipulation of Dismissal, Doc. No. 39; Ruling on Mot. to Dismiss, Doc. No. 50. The only

remaining claim in this case is a Fourth Amendment claim of excessive force against the four

DHS officers, Doug Smith, James Bentz, David Riccio, and Brendan Cullen, based on their

decision to permit a police canine named "Joker" to approach Boudreau while he was handcuffed

and detained, after which Joker bit Boudreau on the leg. *See* Ruling on Mot. to Dismiss at 15.

Boudreau has filed the following motions, among others, which are currently pending:

Motions to Determine the Sufficiency of Defendant Smith's Answers or
Objections ("Mot. to Determine Sufficiency"), Doc. Nos. 62, 71

Motion to Compel the Production of Documents from Defendant Cullen,
("Mot. to Compel") Doc. No. 66

Motion for Service of Subpoena, Doc. No. 69

Motion for Appointment of Counsel, Doc. No. 63

Motion to Extend Discovery Deadlines, Doc. No. 64

Motion for Extension of Time to Respond to Defendant's Motion for Summary
Judgment, Doc. No. 78

I will address each motion in turn.

I. <u>Motion to Determine the Sufficiency (Doc. Nos. 62, 71)</u>

Boudreau's first motion (doc. no. 62) challenges Smith's responses to his written requests

for admissions that he sent in early December 2018. Boudreau contends that Smith's responses

and objections to his requests are insufficient and/or unjustified and seeks an order compelling

Smith to respond to the merits of the written requests and/or award monetary relief for incurred

expenses. Smith has not responded to Boudreau's motions. For the following reasons,

Boudreau's motions (doc. no. 62, 71) are **GRANTED in part and DENIED in part.**

Requests for Admissions are not discovery tools in the traditional sense. *Brodeur v.

McNamee*, 2005 WL 1774033, at *2 (N.D.N.Y. July 27, 2005). "While discovery mechanisms

such as requests for document production, interrogatories, and depositions typically seek to

uncover information for use in pursuing or defending against a litigated claim, requests for

admissions serve the distinctly different purpose of assisting the parties and the court to narrow

the factual issues to be presented for determination in connection with such a claim, either on

motion or at trial." *Id.* The party requesting the admission "bears the burden of setting forth its

requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be

answered with a simple admit or deny without explanation, and in certain instances, permit a qualification or explanation for purposes for clarification." *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003).

Federal Rule of Civil Procedure 36(a)(6) permits the requesting party, in this case Boudreau, to move for a determination of the sufficiency of an answer or objection to a request for an admission. "Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6). "When assessing the sufficiency of a party's responses, a court considers whether the response meets the substance of the request and whether any qualifications are demanded by, and made in, good faith." *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 1457142, at *5 (S.D.N.Y. May 26, 2009); *see also, e.g., Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988). "On a Rule 36(a)(6) motion, '[t]he burden is on the objecting party to persuade the court that there is a justification for the objection.'" *Freydl v. Meringolo*, 2011 WL 2566079, at *2 (S.D.N.Y. June 16, 2011) (quoting 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2263 (3d ed. 2010)).

Smith objects to several of Boudreau's written requests for admissions because they seek information that is either irrelevant to the sole remaining constitutional claim and/or beyond the scope of Smith's personal involvement in the case. *See* Def. Douglas Smith's Resp. to Pl.'s First Request for Admis., Doc. No. 62, 16-31. Boudreau contends that Smith's objections are unjustified.

Boudreau first challenges Smith's responses to the following requests regarding the tracking of his cell phone on December 29, 2015:

> Request No. 1:    Admit that anyone, who is employed by the [DHS], pinged [Boudreau's] cell phone GPS location at any time on December 29, 2015.
>
> Request No. 2:    Admit that on December 29, 2015, between the hours of 6:00pm and 11:00pm, that you received [Boudreau's] cell phone GPS location from the Rhode Island State Police via your cell phone.
>
> Request No. 3:    Admit that on December 29, 2015, between the hours of 4:00pm and 11:00pm, that you received [Boudreau's] cell phone GPS location from James Bentz.
>
> Request No. 5:    Admit that you have ever pinged the GPS location of an individual for a violation of Title 18 U.S.C.S. [§] 2252 OR [§] 2252A, other than [Boudreau].
>
> Request No. 7:    Admit that the [DHS] has policies and/or procedures for tracking [an] individual's cell phone GPS location.

Mots. to Determine Sufficiency, Doc. No. 62 at 3-5, Doc. No. 71 at 3-5. Smith gave the following response to each of these requests: "See Objections above. This request is not relevant to the sole remaining issue in this litigation." *Id.* Additionally, with respect to Request Number 7, Smith contends that Boudreau is making "a general discovery request to the [DHS], which is not a party to this litigation . . . ." *Id.* Boudreau contends that those are "straightforward factual questions that [Smith] does not answer," and the information is relevant to the issue of why the defendants continued to use a canine to track Boudreau when his GPS location had already been known. *Id.*

Based on my review, I find that those requests for admissions at issue seek irrelevant information. The sole remaining claim in this case is that the DHS defendants failed to intervene when BPD officers permitted their canine to approach Boudreau after he was handcuffed and

4

detained.  *See* Ruling on Mot. to Amend at 15-16.  Smith's knowledge of, and/or involvement in,

the tracking of Boudreau through the use of his cell phone before Boudreau was detained at the

pool hall is not relevant to the ultimate issue whether excessive force was applied.  Therefore,

Boudreau's request for more direct responses to those statements (requests 1, 2, 3, 5,7) is

**DENIED**.

Boudreau next challenges Smith's response to requests for admissions regarding the

apprehension of "suicidal individuals."  These include the following:

> Request No. 6:          Admit that you have received training, at any time, in
> apprehending suicidal individuals.

> Request No. 9:          Admit that the [DHS] has policies and/or procedures for
> apprehending suicidal individuals.

Mots. to Determine Sufficiency, Doc. No. 62 at 4-5, Doc. No. 71 at 4-5.  Again, Smith objected

to those requests, contending that they seek irrelevant information.  *Id.*  I agree.  Whether

Boudreau was suicidal at the time of the dog bite has no bearing on whether the defendants

subjected him to excessive force or failed to intervene to prevent the use of such force.

Therefore, Boudreau's motion for more direct responses to those requests (nos. 6, 9) is

**DENIED**.

Boudreau also challenges Smith's responses to requests regarding the use of canines to

"track" suspects.  He issued the following requests for admissions to Smith:

> Request No. 8:          Admit that the [DHS] has policies and/or procedures for
> tracking individuals with a canine.

> Request No. 10:          Admit that you have ever tracked the location of an
> individual wanted for violations of Title 18 USCS [§] 2252 OR [§] 2252A with a
> canine, other than [Boudreau].

> Request No. 11:    Admit that you have ever been involved with tracking an individual with a law enforcement canine, other than [Boudreau].
>
> Request No. 12:    Admit that [Joker] bit any of the individuals tracked, other than [Boudreau].
>
> Request No. 15:    Admit that you have ever requested the use of a police canine in tracking an individual while you have been employed by [DHS], other than the tracking of [Boudreau].
>
> Request No. 24:    Admit that you have ever witnessed a police canine bite an individual, other than [Boudreau].
>
> Request No. 25:    Admit that you were aware, prior to Canine Joker's deployment, that police canines are trained to bite and hold the individual that they are searching for.
>
> Request No. 34:    Admit that you have had any experience with a bite and hold trained canine prior to December 29, 2015.
>
> Request No. 48:    Admit that the [DHS] routinely uses a canine to search for suspects with arrest warrants for charges under Title 18 USCS § 2252 or [§] 2252A.
>
> Request No. 49:    Admit that the [DHS] has ever used a canine to search for a suspect with an arrest warrant for charges under Title 18 USCS [§] 2252 or [§] 2252A.

Mots. to Determine Sufficiency, Doc. No. 62 at 5-16, Doc. No. 71 at 5-16.  Smith objects to those requests on the grounds that they seek irrelevant information and that they are general requests for information from DHS, which is not a party to this case.  *Id.*  Boudreau counters that Smith, as a DHS agent, would be aware of policies and procedures regarding the use of canines to track individuals and that his responses to these requests "may lead to discoverable evidence regarding [his] knowledge of canine tactics about to be deployed."  *Id.* at 5-8.

I agree that theose requests for admissions seek irrelevant information.  Whether Smith followed proper protocol in "tracking" Boudreau with the use of a canine, assuming he was

personally involved in the tracking of Boudreau, is not relevant to the issue whether he subjected

Boudreau to excessive force or failed to intervene when such force was applied. Boudreau is

essentially asking Smith, whom he is suing in an individual capacity, to search and procure for

him information on other cases where DHS agents and/or canines were involved. *See Brodeur*,

2005 WL 1774033, at *2 (distinguishing requests for admissions with requests for production of

documentary evidence). Therefore, Boudreau's motion for responses to those requests (nos. 8,

10, 11, 12 15, 24, 25, 34, 48, 49) is **DENIED**.

Other requests concerning Smith's and the DHS' involvement in other cases including

the following:

> Request No. 30:     Admit that [Smith] has been named as a defendant in any
> lawsuit in the past ten (10) years, other than [Boudreau's] case.

> Request No. 31:     Admit that the [DHS] has received any complaints
> regarding [Smith's] conduct in the past ten (10) years other than [Boudreau's]
> complaint.

> Request No. 32:     Admit that it is [DHS's] policy to secure an arrestee in a
> law enforcement vehicle when that arrestee has been arrested in a public
> establishment, such as a restaurant.

> Request No. 36:     Admit that [Smith] has ever worn a body camera while
> employed by the [DHS].

Mots. to Determine Sufficiency, Doc. No. 62 at 9-13, Doc. No. 71 at 9-13. Smith objected to

answering Request Numbers 30 and 31 because he maintains that he was not involved in

Boudreau's arrest. *Id.*

Courts in this Circuit have permitted discovery of law enforcement personnel records.

*See McKenna v. Incorporated Village of Northport*, 2007 WL 2071603, at *7-9 (E.D.N.Y. July

13, 2007). Those courts apply a two-pronged test to determine whether such discovery should be

permitted.  *Id.* (citing *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988)).  First, the defendants (law enforcement officers) must "mak[e] a 'substantial and threshold showing' that there are specific harms likely to accrue from disclosure of the specific materials."  *Id.* at *7 (quoting *King*, 121 F.R.D. at 189).  Second, provided the defendants satisfy the first requirement, the district court "must balance the interests favoring and disfavoring disclosure."  *Id.* at *8.  Factors favoring disclosure include "the relevance to the plaintiff's case, importance to and strength of the plaintiff's case, and importance to the public interest."  *Id.* (citing *King*, 121 F.R.D. at 195-96).  Factors disfavoring disclosure include "threat to police officers' own safety, invasion of privacy, weakening of law enforcement programs, any chilling effect on internal investigative candor and citizen complainant candor, and state privacy law."  *Id.* (citing *King*, 121 F.R.D. at 191-95).

"However, even where no substantial harm is shown under the first prong of the analysis, an objection as to the relevance of the documents may prevent their disclosure."  *Bishop v. County of Suffolk*, 248 F. Supp. 3d 381, 389 (E.D.N.Y. Mar. 31, 2017) (quoting *Cody v. N.Y.S. Div. of State Police*, 2008 WL 3252081, at *3 (E.D.N.Y. July 31, 2008)).  "[I]rrelevant records will not be subject to discovery even where defendants fail to meet the requirements for shielding the documents from disclosure under *King*."  *Id.* (quoting *Cody*, 2008 WL 3252081, at *3).  Indeed, the Second Circuit has affirmed a district court's ruling denying discovery of a police officer's personnel records based on the defendant's affirmation that his personnel file contained no relevant disciplinary records.  *See Crenshaw v. Herbert*, 409 F. App'x 428, 430 (2d Cir. 2011).

Although I agree that any prior incidents or complaints of excessive force against Smith may be relevant to the instant case, Boudreau's requests for admissions are overbroad. He is asking Smith to admit to the existence of *any* complaints regarding his conduct as a law enforcement officer in the last ten years and whether he has ever been a defendant to another lawsuit. Boudreau's requests are not narrow in scope and will require Smith to produce information that is irrelevant to the sole remaining excessive force claim in this case. *See Osborne v. Vasquez*, 2013 WL 995070, at *3 (D. Conn. Mar. 11, 2013) (plaintiff's request for all complaints previously made against defendant police officers is overbroad). Rather than require Boudreau to file an amended request, Smith is directed to admit or deny the existence of any previous complaints of excessive force in his record. Therefore, Boudreau's motion for responses to those requests (nos. 30, 31) is **GRANTED**.

Regarding Request Numbers 32 and 36, Boudreau is seeking admissions or denials on irrelevant matters. Whether it is DHS policy to secure an arrestee in a law enforcement vehicle and whether Smith has ever used a body camera are not relevant to the claim of excessive force. Thus, Boudreau's motion for responses to those requests (nos. 32, 36) is **DENIED**

Some of Boudreau's requests relate to conclusory assertions, not questions of fact. They include the following:

> Request No. 41:    Admit that [Boudreau] deserved to be bitten by Canine Joker.

> Request No. 42:    Admit that the dog bite that [Boudreau] suffered on December 29, 2015 was justified.

Mots. to Determine Sufficiency, Doc. No. 62 at 12, Doc. No. 71 at 12-14. Because those requests do not seek admissions or denials of fact, they are improper. *See Young v. McGill*, WL

1660680, at *4 (D. Conn. May 11, 2012) (plaintiff's requests for admissions are not statements

of fact that can be admitted or denied).  Thus, Boudreau's motion for responses to those requests

(nos. 33, 41, 42) is **DENIED**

The remaining six challenged requests for admissions concern the specific events of

December 29, 2015:

> Request No. 17:      Admit that you had any communications, of any kind, with
> Officer Luigi Amasino on December 29, 2015 prior to deployment of Canine
> Joker.
>
> Request No. 18:      Admit that on December 29, 2015, prior to Canine Joker's
> deployment, that you discussed how canine Joker would track [Boudreau], with
> an[y] of the Branford police officers.
>
> Request No. 39:      Admit that the [DHS] did not investigate the dog bite that
> [Boudreau] suffered on December 29, 2015.
>
> Request No. 43:      Admit that prior to [Boudreau's] arrest that you were at the
> Kohl's parking lot with Officer Carney when she stated that [Boudreau] was
> "disgusting" and "screw this guy."
>
> Request No. 44:      Admit that prior to [Boudreau's] arrest that you were at the
> Kohl's parking lot with Officer Carney when referring to [Boudreau] being
> allegedly suicidal stated, "one less asshole in the world."
>
> Request No. 45:      Admit that the police body camera of Officer Kaufman at
> 06:35 depicts both Brendan Cullen and David Riccio standing a few feet from
> [Boudreau] and facing [Boudreau].

Mots. to Determine Sufficiency, Doc. No. 62 at 7-13, Doc. No. 71 at 7-15.  Smith objected to

Request Numbers 17 and 18 but has not stated the grounds for his objections.  To the extent he

claims that Boudreau's requests seek irrelevant information, I disagree.  Any conversations

Smith had with Branford police officers regarding the use of a canine to find and/or apprehend

Boudreau may yield information relevant to the excessive force claim.  Although Smith admitted

in other responses to communicating with several Branford police officers on December 29,

2015 and that he was at the Kohl's parking lot when Joker was deployed, but he does not recall any specific discussions regarding Joker's deployment, Smith must still respond to the requests at issue here. Mots. to Determine Sufficiency, Doc. No. 62 at 7-8, Doc. No. 71 at 7-8. Therefore, Smith is directed to respond and Boudreau's motion for further responses to those requests (nos. 17, 18) is **DENIED**

Regarding Request Number 39, Boudreau contends that whether the DHS investigated the dog bite "is relevant to whether the [d]efendants had reported the dog bite . . . to their superiors, or reported the incident in any of their reports or other documents related to [Boudreau's] arrest." Mot. to Determine Sufficiency, Doc. No. 71 at 13-14. He also contends that the admission will show that the defendants attempted to cover up the incident. *Id.* at 14. Although I agree that Smith could admit or deny whether he personally reported the dog bite incident to DHS, Boudreau's request requires him to admit or deny the existence of any investigation on behalf of DHS, which is not proper for purposes of Rule 36. As discussed below in my ruling on the motion to compel production of any such investigative documents, Boudreau acknowledges that he has sought this information directly from DHS. Thus, the request for admission as stated is improper, and a directed response is not warranted. Therefore, Boudreau's motion for responses to that request (nos. 39) is **DENIED**

Request Numbers 43 and 44 are two-fold. They first seek an admission that Smith was at the Kohl's parking lot with Officer Carney. Although Smith has objected to those requests, he has already admitted to being present at the Kohl's parking lot with Branford police officers. *See* Mots. to Determine Sufficiency, Doc. No. 62 at 8, Doc. No. 71 at 8. Boudreau also requests that Smith admit or deny hearing Officer Carney make specific derogatory remarks about him while

in the parking lot.  The fact that those requests may seek admissions based on hearsay statements that may be inadmissible at trial does not disqualify them as proper requests.  *See Booth Oil Admin. Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 81 (W.D.N.Y. 2000).

Smith objects on the ground that the requests seek irrelevant information, and Boudreau counters that Smith's responses "will lead to discoverable evidence regarding whether the canine bite of [Boudreau] was intentional, expected, and/or anticipated."  Mot. to Determine Sufficiency, Doc. No. 71 at 15.  Although the information really goes to Officer Carney's state of mind on the night of the incident, I agree that it bears some relevance to whether Smith was aware that Branford police officers, who deployed the canine, harbored any animosity toward Boudreau, and therefore, whether he was aware of any possibility that the officers intended to harm him that night.  I do not agree with Smith that the requests are beyond the scope of the excessive force claim, and therefore, Boudreau's motion for responses to those requests (nos. 43, 44) is **GRANTED.**  Smith is directed to provide amended responses to those requests.

Finally, Request Number 45 asks Smith to draw a conclusion based on the body camera footage of one of the officers, which has already been incorporated by reference in Boudreau's complaint.  In my ruling on the motion to dismiss, I noted that it is not clear from the footage whether any of the DHS agents are depicted therein.  *See* Ruling on Mot. to Dismiss at 14.  I disagree with Smith's objection that this request seeks irrelevant information and that it is improperly directed at Smith.  Although Riccio and Cullen are defendants to this action, and Boudreau can ask those defendants directly whether they were standing a few feet from him inside the pool hall, presumably Smith knows that as well and can easily answer.  Therefore, I

will direct Smith to respond to that request at this time and Boudreau's motion for responses to that request (no. 45) is **GRANTED**.

Based on the foregoing, Boudreau's motions to determine the sufficiency of Smith's responses to his requests for admissions (doc. nos. 62 and 71) are **DENIED** with respect to almost all requests, but **GRANTED** with respect to numbers 30, 31, 43, 44, and 45. Within twenty-one (21) days from the date of this Order, Smith shall file amended responses to those requests.

## II. Motion to Compel Production of Documents from Defendant Cullen (Doc. No. 66)

Boudreau has also filed a motion to compel Cullen to produce several documents and records that he claims are relevant to the case. Pl.'s Mot. to Compel Production of Documents from Def. Brendan Cullen ("Mot. to Compel"), Doc. No. 66. Cullen filed a response to the motion explaining his objections and responses to Boudreau's requests. Def. Cullen's Resp. to Pl.'s Mot. to Compel Discovery ("Cullen's Resp."), Doc. No. 67. Thereafter, Boudreau filed a reply to Cullen's response. Pl.'s Reply to Def. Cullen's Resp. to Pl.'s Mot. to Compel Disc. ("Boudreau's Reply"), Doc. No. 70. For the following reasons, the motion to compel is **DENIED in part and GRANTED in part**.

"Where a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'" *In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)); *see also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989). Because the Federal Rules are to be construed liberally in favor of discovery, the burden falls on the party resisting discovery to show why

discovery should be denied. *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn. 2004); *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).

All "[m]otions relative to discovery," including motions to compel, "are addressed to the discretion of the [district] court." *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The discovery orders "will only be reversed if [the district court's] decision constitutes an abuse of discretion." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (citing *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

Boudreau first moves to compel the production of "[a]ll insurance policies that cover the [d]efendants' conduct in this lawsuit." Request for Production Number 1, Mot. to Compel at 1. He relies on Federal Rule of Civil Procedure 26(a)(1)(iv), which provides that "a party must, without awaiting a discovery request, provide to the other parties for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." *Id.* at 2. Cullen objects on the grounds that the request is overbroad, unduly burdensome, and not relevant to the remaining excessive force claim in this case. *Id.* at 1-2. However, he is willing to produce this information after I rule on the pending motion for summary judgment, Doc. No. 72. *Id.*; Cullen's Resp. at 3.

I agree with Cullen that compelling production of those documents is not warranted at this time. Because (1) this case involves a suit against federal law enforcement officers, (2) such records may contain confidential, privileged information, and (3) there is a pending motion for

summary judgment by the defendants, the motion to compel the insurance information is **DENIED without prejudice** subject to refiling in the event I deny all or part of the summary judgment motion.

Next, Boudreau moves to compel production of "[a]ll telephone records, including cell phone records for [Cullen] that show any calls or text messages related to [Boudreau] on December 29, 2015." Request for Production Number 3, Mot. to Compel at 3. Cullen has responded that he is not in possession of any telephone records. *Id.*; Cullen's Resp. at 4. Boudreau counters that such records directly relate to Cullen's credibility because he previously asserted that he was making calls on his cell phone when the dog bite occurred, which conflicts with the video evidence. Boudreau's Reply at 3. He also claims that the records "may show that [Cullen] had communications with the canine team regarding the continued tracking of [Boudreau]." *Id.*

Although Cullen represents that he is not in possession of the records, I agree with Boudreau that they are relevant to the remaining issue of whether Cullen and/or the other defendants failed to intervene when Branford police officers permitted the dog to approach Boudreau, who was already handcuffed. Text messages might show the officers' states of mind which could weigh on the issue of excessive force. Furthermore, it would not be overly burdensome to produce the records because they should be readily available in Cullen's phone or from his cell phone carrier upon request. Accordingly, although he has represented he is not in possession of any records, Cullen is directed to attempt to obtain such records. Therefore, the motion to compel the cell phone information is **GRANTED.** Within twenty-one (21) days from

the date of this Order, Cullen shall file an amended response to the request he has been directed to answer.

Boudreau next moves to compel production of "[a]ll photographs [taken] of [him] . . . on December 29, 2015" and "one color copy of a photograph of [Cullen]." Requests for Production Numbers 4 and 5, Mot. to Compel at 3-4. Cullen responded that he is not in possession of any photographs of Boudreau and that any such photographs would be in the possession of the BPD, the arresting agency. Cullen's Resp. at 4. Cullen objects to providing a photograph of himself to Boudreau for security reasons, but he is willing to provide him "with the shirt colors for the two federal defendants" at the pool hall on December 29, 2015. *Id.* at 5.

Boudreau has not shown why he is unable to obtain photographs of himself from his arrest from the BPD or through other means, nor has he shown that such photographs are readily accessible to Cullen. With respect to the photograph of Cullen, I agree that production of that evidence implicates security concerns, especially given Boudreau's status as a federal inmate. Moreover, I am not convinced that a photograph of Cullen is relevant because Boudreau has stated in his reply that the video evidence already in the record "clearly depict [Cullen]" and that a photograph would not be any different. Boudreau's Reply at 4. Therefore, the requests for photographic evidence are **DENIED**.

Boudreau next moves for production of various sets of written policies and regulations, which may or may not exist, including:

> All [DHS] policies and procedures regarding [the] use of force and [the] use of canines.
>
> All [DHS] policies and procedures regarding reporting and documenting of arrestee injuries.

All documents related to policies, training, techniques and procedures for tracking and apprehending an individual with a canine.

All documents of policies, procedures, techniques, and training related to the safety of arrestees after the arrestee has been arrested.

All documents related to the requesting of assistance of local law enforcement to assist DHS agents in locating and apprehending an individual.

Requests for Production Numbers 6-8, 11, 16, Mot. to Compel at 5-10. Cullen argues that those requests are premised on Boudreau's baseless assumption that those written policies and procedures exist, and Cullen is not aware of any such policies. *See* Cullen's Resp. at 5-8, 13. Alternatively, Cullen asserts that he provided to Boudreau a list of procedures pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951),[1] outlining the steps Boudreau must take to obtain those materials, but Boudreau refuses to comply with those procedures. *See* Cullen's Resp. at 5-8, 13. Boudreau counters that, on March 7, 2019, he mailed a written *Touhy* request to the DHS requesting information, but he "expects the [DHS] to object to the *Touhy* requests." Boudreau's Reply at 6.

Because Cullen has provided Boudreau with instructions on how to obtain any such policies or regulations, and Boudreau has followed those instructions, compelling Cullen to obtain such documents is unwarranted at this time. Therefore, the motion to compel policy and regulation information is **DENIED without prejudice** to refiling at a later date.

Boudreau next moves to compel production of "[a]ll documents, materials, written or recorded, that were created as to [his] arrest, booking, and intake process, or in response to any complaints thereafter." Request for Production Number 9, Mot. to Compel at 7. Cullen

---

[1] In *Touhy*, the United States Supreme Court held that a subordinate agency employee cannot be compelled to comply with a subpoena *duces tecum* where a valid agency regulation prohibits compliance in the absence of agency authorization. 340 U.S. at 467-68. As noted in Cullen's response, requests for information from the DHS are

contends that all reports in his possession have already been provided to Boudreau, and any additional reports Boudreau seeks must be requested from the DHS via the *Touhy* regulations. Cullen's Resp. at 9. Boudreau counters that the discovery provided by Cullen was not exhaustive of his request. Boudreau's Reply at 9. He argues that there are documents that Cullen received from his detention facility and documents created by DHS "Agent Richardson" on December 30, 2015 regarding his arrest that have not been produced. *Id.*

Boudreau has not clearly indicated whether any such documents that Cullen allegedly received from the Wyatt facility even exist, nor has he clearly shown that Cullen is in possession of any additional materials regarding his arrest on December 29, 2015. To the extent Boudreau contends that the DHS is still in possession of additional materials related to his arrest, he may seek that information directly from DHS via the *Touhy* procedures that Cullen has provided to him. Therefore, the motion to compel production of those documents is **DENIED without prejudice** to refiling at a later date.

Boudreau next seeks an order compelling the production of "[a]ll [DHS] personnel files for [Cullen]." Request for Production Number 12, Mot. to Compel at 8. He claims that the information "could be relevant as to whether [Cullen] willfully violated [his] constitutional rights," particularly, whether Cullen had a motive or intent to harm him. *Id.* at 9-10. Cullen represents "that he has *no* prior complaints, substantiated or unsubstantiated, involving the use of canines," and that disclosing his personnel file to an inmate at a federal prison implicates legitimate security concerns that outweigh any discovery value. Cullen's Resp. at 11-12. Boudreau counters that the Second Circuit allows for the discovery of such material, and, if in

---

governed by 6 C.F.R. §5.45. Cullen's Resp. at 6.

fact there are no complaints of misconduct against Cullen, then he should file a sworn affidavit stating as such. Boudreau's Reply at 10.

Like the request for admission served on Smith, the request for production of Cullen's entire personnel file is overbroad. To the extent Boudreau seeks an admission regarding whether there exists any prior complaints or lawsuits against Cullen for excessive force, he may tailor his discovery request in that manner. However, the request as stated will likely lead to the production of irrelevant information, the disclosure of which could implicate security concerns. Therefore, the motion to compel this information is **DENIED without prejudice** to refiling a more narrow request.

Next, Boudreau seeks an order compelling the production of "[a]ll documents related to any internal investigation of [Boudreau's] dog bite on December 29, 2015." Request for Production Number 18, Mot. to Compel at 11. Cullen contends that he is not aware of the existence of any documents, and Boudreau is moving to compel on the baseless assumption that such documents exist. Cullen's Resp. at 13. Boudreau counters that I should compel Cullen to ascertain through DHS whether any documentation exist. Boudreau's Reply at 11.

Although I agree that any documents would be relevant to the excessive force claim in this case, I cannot compel the production of documents that do not exist. *See Grayson v. General Electric Co.*, 2016 WL 1275027, at *2 (D. Conn. Apr. 1, 2016). The fact that Boudreau may not believe Cullen's assertion that those documents do not exist is not a sufficient basis for me to compel production of documents. *See Pugliese v. United Technologies Corp.*, 2007 WL 3124726, at *3 (D. Conn. Oct. 23, 2007). Moreover, Boudreau has not shown an inability to

procure that information himself directly from DHS, assuming it exists. Therefore, the motion to compel this information, which may or may not exist, is **DENIED**.

Finally, Boudreau seeks an order compelling production of "[a]ll notes, written and electronic, that pertain to any interviews and/or questioning of witnesses at the Cue & Brew on December 29, 2015." Mot. to Compel at 11. Cullen responded that he does not have any records. Cullen's Resp. at 13. Boudreau counters that the video evidence shows the defendants taking notes while speaking with witnesses at the pool hall. Boudreau's Reply at 11. I have no basis to discredit Cullen's assertion that he does not possess records from any witness interviews on the night of the incident. To the extent Boudreau believes that records exist, he can request them directly from the DHS. Moreover, even if those records exist, Boudreau has not explained how any witness interviews are relevant to the excessive force claim. At this stage, there is no reasonable basis to conclude that any of the defendants were interviewing witnesses about the dog bite that occurred during Boudreau's arrest. Therefore, the motion to compel that information is **DENIED**.

Based on the foregoing, Boudreau's motion to compel Cullen to produce the various documents, (doc. no. 66), is **GRANTED in part and DENIED in part**. Within twenty-one (21) days from the date of this Order, Cullen shall file an amended response to the request he has been directed to answer.

III. Motion for Service of Subpoena (Doc. No. 69)

Boudreau has filed a motion for an order directing the U.S. Marshals to serve a subpoena

on the BPD. He claims that he cannot effect service of the subpoena himself under Federal Rule of Civil Procedure 45, and his *in forma pauperis* status entitles him to have the U.S. Marshals effect service of the subpoena.

Boudreau's *in forma pauperis* status does not authorize the district court to pay for his discovery costs or direct the U.S. Marshal to effect service of a subpoena. *See Doe v. United States*, 112 F.R.D. 183, 185 (S.D.N.Y. 1986); *Garraway v. Morabito*, 2003 WL 21051724, at *7 (N.D.N.Y. May 8, 2003) (explaining to *pro se* litigant that court will not pay expenses associated with discovery); *Malsh v. Police Dept. of City of New York*, 1995 WL 296735, at *2 (S.D.N.Y. May 16, 1995) (denying motion to direct U.S. Marshal to serve subpoena). Therefore, Boudreau's motion to direct service of his subpoena (doc. no. 69) on the BPD is **DENIED**.

To the extent Boudreau wishes to serve the BPD, he must do so pursuant to Rule 45(b)(1). Moreover, Boudreau is advised that he must provide the defendants with a notice and copy of subpoena before service, in accordance with Rule 45(a)(4).

IV. Motion for Appointment of Counsel (Doc. No. 63)

Boudreau has filed a motion for the appointment of *pro bono* counsel to represent him in this matter. He claims that counsel is needed to assist him with the discovery process in this case. For the following reasons, his motion (doc. no. 63) is **DENIED**.

The court "may request an attorney to represent any person unable to afford counsel." 42 U.S.C. § 1915 (e)(1). "District courts exercise substantial discretion in deciding whether to appoint counsel . . . ." *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003). The Second Circuit has cautioned against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989). Before appointment is even considered,

the indigent movant must establish that he is unable to obtain counsel. *Id.* at 173; *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). If the movant satisfies that threshold requirement, I must then consider the merits of his claim and determine whether his position "seems likely to be of substance." *Hodge*, 802 F.2d at 61. If so, I should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *Id.* at 61-62.

Boudreau has not shown that he has made any efforts to obtain counsel on his own. Moreover, contrary to his assertion, the fact that I permitted his excessive force claim to proceed against the defendants does not mean that his claim is sufficiently meritorious to warrant the appointment of *pro bono* counsel. For these reasons, the motion for appointment of counsel (doc. no. 63) is **DENIED without prejudice** to refiling at a later stage.

V.  Motion to Extend Discovery Deadlines (Doc. No. 64) and Motion for Extension of Time to Respond to Defendants' Motion for Summary Judgment (Doc. No. 78)

Finally, Boudreau has moved to extend the deadlines for discovery until August 15, 2019 and the deadlines to file a dispositive motion until September 15, 2019. Mot. for Ext. of Time, Doc. No. 64. The defendants have filed a written objection to the motion, contending that Boudreau has already had more than sufficient time to conduct discovery and that the case is ripe for a summary judgment motion. Obj. to Mot. to Extend Disc. and Dispositive Mot. Deadlines., Doc. No. 65. Boudreau countered with a written reply, arguing that the defendants have not complied with his discovery requests, and he is still waiting on requested discovery from the DHS. Pl.'s Reply to Defs.' Obj. to Extend Disc, Doc. No. 68. Since the filing of this motion and

supplemental responses, the defendants have filed a motion for summary judgment. Accordingly, there is no basis to extend the dispositive motions deadlines and, therefore, Boudreau's motion (doc. no. 64) is **DENIED** in that respect. His motion to extend the discovery deadline is **GRANTED nunc pro tunc**.

Since filing his Motion for Extension of Time (doc. no. 78), Boudreau has filed an opposition to the defendants' Motion for Summary Judgment. *See* Opp. to Mot. Summ. J., Doc. No. 98. Accordingly, his Motion for Extension of Time is **denied as moot**.

## ORDERS

Based on the foregoing, I hereby enter the following orders:

(1)  The motions to determine the sufficiency of Smith's responses to the requests for admissions (doc. nos. 62 and 71) are **GRANTED in part and DENIED in part**. Within twenty-one (21) days from the date of this Order, Smith shall file amended responses to the requests he has been directed to answer.

(2)  The motion to compel Cullen to produce the listed documents (doc. no. 66) is **GRANTED in part and DENIED in part**. Within twenty-one (21) days from the date of this Order, Cullen shall file an amended response to the request he has been directed to answer.

(3)  The motion for service of the subpoena on the BPD (doc. no. 69) is **DENIED**.

(4)  The motion for appointment of counsel (doc. no. 63) is **DENIED without prejudice**.

(5)  The motion to extend the deadlines for discovery dispositive motions (doc. no. 64) is **DENIED in part and GRANTED nunc pro tunc in part**. The motion for extension of time to respond to the defendants' summary judgment motion (doc. no. 78) is **DENIED as**

**moot**.

So ordered.

Dated at Bridgeport, Connecticut, this 22nd day of August 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge