UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON BOUDREAU, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:17-cv-589 (SRU) |
| | : | |
| SMITH, et al., | : | |
|     Defendants. | : | |

## RULING ON PENDING MOTIONS

On April 10, 2017, the plaintiff, Jason Boudreau, a federal inmate currently confined at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, filed a civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against the town of Branford, Connecticut, the Branford Police Department ("BPD"), five members of the BPD, and four members of the United States Department of Homeland Security ("DHS") for using excessive force during his arrest, in violation of his Fourth Amendment protection against unreasonable seizures. All claims against the town of Branford, the BPD, and all BPD officers have since been dismissed. Initial Review Order, Doc. No. 19, at 13; Stipulation of Dismissal, Doc. No. 39; Ruling on Mot. to Dismiss, Doc. No. 50. The only remaining claim in this case is a Fourth Amendment claim for excessive force against three of the four DHS officers, Doug Smith, David Riccio, and Brendan Cullen,[1] based on their failure to intervene when BPD officers permitted a police canine named "Joker" to approach Boudreau while he was handcuffed and detained, after which Joker bit Boudreau on the leg. *See* Ruling on Mot. to Dismiss at 15.

The following motions, among others, are currently pending:

Motions to Serve Additional Interrogatories on Cullen and RiccIo, Doc. Nos. 79, 92;

---

[1] On May 28, 2019, Boudreau filed a notice of voluntary dismissal of his claims against the fourth DHS agent, James Bentz. Pl.'s Mot. for Voluntary Dismissal as to Only Def. James Bentz (Doc. No. 93).

Motions to Strike the Defendants' Qualified Immunity Defense, Doc. Nos. 80, 89;

Motions for Default Judgment Against the Defendants, Doc. Nos. 81, 90;

Motion to Delay Ruling on the Defendants' Motion for Summary Judgment, Doc. No. 83;

Motion to Strike the Declaration of Jay Kaufman, Doc. No. 84;

Motion to Strike Cullen's Declaration in Support of Motion for Summary Judgment, Doc. No. 85;

Motion to Strike Smith's Declaration in Support of Motion for Summary Judgment, Doc. No. 86;

Motion to Strike Riccio's Declaration in Support of Motion for Summary Judgment, Doc. No. 87;

Cullen's Motion for Protective Order with respect to Boudreau's Second Request for Admissions, Doc. No. 88;

Motion to Compel Riccio to Answer Interrogatories, Doc. No. 95;

Motion to File Oversized Response to Defendants' Motion for Summary Judgment, Doc. No. 97;

Motion to Seal Medical Records, Doc. No. 99;

Motion to Compel Production of Police Body Camera Video, Doc. No. 100;

Motion to Compel Defense Counsel to Communicate with Boudreau, Doc. No. 101;

Motion for Clarification of the Court's August 22, 2019 Order, Doc. No. 103;

Motion to Compel Defendant Brendan Cullen to Answer Interrogatories, Doc. No. 104;

Motion to Extend Discovery and to Supplement Opposition to Summary Judgment, Doc. No. 107; and

Motion to Serve Subpoena by Alternative Service, Doc. No. 108.

I have categorized these pending motions as follows: Cullen's Motion for Protective Order (Doc. No. 88), Motions to Compel Answers to Interrogatories (Doc. Nos. 79, 92, 95, 104), Motions for Default Judgment (Doc. Nos. 81, 90), Motion to Compel Production of Evidence (Doc. Nos. 100, 108), Motion to Compel Defense Counsel to Communicate (Doc. No. 101), Motion for Clarification of the Court's August 22, 2019 Order (Doc. No. 103), and Motions Regarding the Pending Summary Judgment Motion (Doc. Nos. 80, 83-87, 89, 97, 99, 107). I hereby issue the following rulings on those motions.

I. <u>Cullen's Motion for Protective Order with Respect to Plaintiff's Second Set of Requests for Admissions ("Mot. for Protective Order") (Doc. No. 88)</u>

On May 22, 2019, Cullen filed a motion seeking a protective order with respect to 105 Requests for Admissions Boudreau served on him on May 6, 2019. I previously granted Cullen's request for a protective order with respect to Boudreau's first set of Requests for Admissions, which he served in October 2018. *See* Ruling on Mots. for Protective Order, Doc. No. 76. Specifically, I ruled that the initial requests were vague, sought irrelevant information, or sought opinions or conclusions as opposed to admissions of fact, and therefore, good cause existed to protect Cullen from the undue burden of responding to those requests. *Id.* at 3-4. In granting the protective order, I permitted Boudreau the opportunity to resubmit his requests on the condition that they "be concise and seek only factual information limited to the sole remaining excessive force claim in this case." *Id.* at 4.

Sometime on or shortly after the day I issued my ruling on the initial set of requests,[2] Boudreau served a second set of requests on Cullen. Pl.'s Second Req. for Admis., Doc. No. 88-

---

[2] Cullen states that Boudreau served him with the second set of requests on "May 16, 2019;" Mot. for Protective Order at 1; but the attached Second Request for Admissions is dated "May 6, 2019." Pl.'s Second Req. for Admis., Doc. No. 88-1 at 8. Thus, the date on which the second set of requests was

1. Cullen has now filed his second motion for a protective order, contending that the sixty new requests continue to seek information that is irrelevant, opinion-based, or pertaining to other individuals in the case. Mot. for Protective Order at 2. Thus, Cullen argues that Boudreau has failed to comply with my previous instructions regarding the refiling of his request for admissions. *Id.* Boudreau counters that the information sought—including Cullen's statements about what other officers were doing at the time of the incident—is relevant and that Cullen failed to confer with him prior to seeking a protective order. Pl.'s Resp. to Cullen's Mot. for Protective Order, Doc. No. 94, at 1-2.

I rely on the same standard for protective orders and requests for admissions as stated in my previous ruling:

> "Because the liberality of pretrial discovery has a significant potential for abuse, courts may issue protective orders which restrict permissible discovery if it would unduly annoy or burden the other party." *Joseph L. v. Connecticut Dept. of Children and Families*, 225 F.R.D. 400, 401 (D. Conn. 2005) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). I have broad discretion regarding whether to issue a protective order. *Id.* (citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)). Rule 26(c) of the Federal Rules of Civil Procedure provides that a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." If good cause is shown, I may "issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c); *see also Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (moving party bears burden of establishing good cause for protective order). "Good cause is established when [the moving] party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order." *Qube Films Ltd.*, 2015 WL 109628, at *2 (internal quotations omitted).
>
> Requests for Admissions are not discovery tools in the traditional sense. *Brodeur v. McNamee*, 2005 WL 1774033, at *2 (N.D.N.Y. July 27, 2005). "While discovery mechanisms such as requests for document production, interrogatories, and depositions typically seek to uncover information for use in pursuing or

---

served is not clear from the record.

defending against a litigated claim, requests for admissions serve the distinctly different purpose of assisting the parties and the court to narrow the factual issues to be presented for determination in connection with such a claim, either on motion or at trial." *Id.* The party requesting the admission "bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without explanation, and in certain instances, permit a qualification or explanation for purposes for clarification." *Dash v. Seagate Technology (US) Holdings, Inc.*, 2015 WL 4257329, at *16 (E.D.N.Y. July 14, 2015) (quoting *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003)).

Ruling on Mots. for Protective Order at 2-3.

Cullen has not indicated whether he has attempted to confer with Boudreau regarding his responses to the second set of requests prior to seeking a protective order. However, the deadline for discovery has already been extended several times in this case, the case has been pending for more than two years, and, based on my review of the second set of requests, Boudreau has failed to comply with my instructions with respect to proper requests for admissions. In the interest of judicial efficiency, I have reviewed all sixty requests for admissions and conclude that the following are proper requests:

Request No. 1: Admit that the police body camera video of Officer Melissa Carney . . . depicts you standing near the handcuffed plaintiff.

Request No. 4: Admit that the police body camera video of Officer Melissa Carney . . . depicts you wearing a red shirt/fleece/top and standing immediately near the handcuffed plaintiff.

Request No. 7: Admit that the police body camera video of Officer Dom Eula . . . depicts you approach and stand in front of the handcuffed Plaintiff.

Request No. 8: Admit that the police body camera video of Officer Dom Eula . . . depicts you immediately near the handcuffed Plaintiff while Canine Joker is barking.

Request No. 9: Admit that while Canine Joker was barking, as stated in Request No. 8, that you did not turn to look at Canine Joker.

5

<blockquote>

Request No. 20: Admit that you did not personally document, at any time, the dog bite that the Plaintiff suffered on December 29, 2015.

Request No. 23: Admit that you did not ask David Riccio or Doug Smith to include details of the dog bite in their reports on the Plaintiff's arrest.

Request No. 24: Admit that you did not notify your supervisor that the Plaintiff had been bitten by Canine Joker.

Request No. 25: Admit that you did not notify Doug Smith that the Plaintiff had been bitten by Canine Joker.

Request No. 29: Admit that you were with Officer Kaufman when you entered the Cue & Brew on December 29, 2015.

Request No. 54: Admit that the police body camera video of Officer Melissa Carney . . . that you are in the video along with Defendant Ricco at the Kohl's parking lot.

Request No. 55: Admit that the police body camera video of Officer Jay Kaufman . . . depicts Officer Amasino and Canine Joker walking past you towards the Plaintiff.

Request No. 56: Admit that the police body camera video of Officer Jay Kaufman . . . depicts you facing the Plaintiff.

Request No. 57: Admit that the police body camera video of Officer Jay Kaufman . . . depicts Defendant Riccio standing next to you.

</blockquote>

Pl.'s Second Req. for Admis. at 1-7. Those requests concern Cullen's actions on December 29, 2015; specifically, they concern where he was both before and at the time of the dog bite and also whether he reported the incident. Such admissions are relevant to whether he failed to intervene when BPD officers allowed the dog to approach Boudreau. Therefore, Cullen's request for a protective order against those fourteen requests is **DENIED**.

I agree with Cullen, however, that good cause exists to protect Cullen from the remaining forty-six requests. Those requests require Cullen to comment on the actions or words of other officers at or near the scene of the incident, give opinions about the evidence, or seek

6

information that I have already determined is irrelevant to the sole remaining Fourth Amendment claim. For example, in Request Number 35, Boudreau asks Cullen to admit that another federal agent was tracking Boudreau via GPS on December 29, 2015. Pl.'s Second Req. for Admis. at 5. Boudreau is using that request as a means to obtain discovery through Cullen regarding the actions of another federal agent on December 29, 2015. Moreover, in Request No. 41, Boudreau asks Cullen to admit that permitting a police canine to bite a handcuffed suspect who is not resisting is excessive force. Pl.'s Second Req. for Admis. at 6. That request seeks a legal opinion from Cullen as opposed to an admission of fact and is, therefore, improper. After careful review, I conclude that these two requests and the other forty-four, which seek similar responses, are improper requests for admissions, and good cause exists to protect Cullen from responding.

Based on the foregoing, the motion for protective order is **DENIED** with respect to Request Nos. 1, 4, 7, 8, 9, 20, 23, 24, 25, 29, 54, 55, 56, 57. Cullen shall file an amended response to these fourteen requests with **twenty-one (21) days from the date of this order**. The motion is **GRANTED** with respect to the remaining requests.

II. Motions to Compel Answers to Interrogatories (Doc. Nos. 79, 92, 95, 104)

On May 10, 2019 and May 28, 2019, Boudreau filed two motions to serve additional interrogatories on Cullen and Riccio. Pl.'s Mot. to Serve Additional Interrog., Doc. No. 79; Pl.'s Mot. to Serve Additional Interrog. in Excess of 25 Interrog., Doc. No. 92. The set of interrogatories attached to each motion appear to be identical. Pl.'s Second Set of Interrog. to Def. David Riccio, Doc. No. 79 at 5-9, Doc. No. 92 at 2-6; Pl.'s Second Set of Interrog. to Def. Brendan Cullen, Doc. No. 79 at 11-15, Doc. No. 92 at 8-12. Boudreau contends that these additional interrogatories are necessary because the defendants' previous responses were

7

"evasive, disingenuous," and/or "contradict[ed] evidence in the record." Pl.'s Mot. to Serve Additional Interrog. at 2-3. For the following reasons, the motions to serve the additional interrogatories are **DENIED**.

Absent leave of the court, Federal Rule of Civil Procedure 33(a)(1) permits a party to serve no more than twenty-five written interrogatories on another party. Fed. R. Civ. P. 33(a)(1). An interrogatory may relate to any fact or issue that is relevant to the underlying claim or another matter under Rule 26(b).[3] Fed. R. Civ. P. 33(a)(2). I may grant leave to serve additional interrogatories to the extent it is consistent with Rules 26(b)(1) and (2). Fed. R. Civ. P. 33(a)(1). However, such alteration of Rule 33 is subject to the limitations of Rule 26(b)(2)(C), which gives the district court discretion to limit discovery (1) that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) if "the party seeking discovery has had ample opportunity to obtain the information . . . in the action;" or (3) that seeks information that is irrelevant or otherwise outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C); *see also Alston v. Sharpe*, 2015 WL 6395937, at *3 (D. Conn. Oct. 22, 2015).

After careful review, I have determined that the additional interrogatories Boudreau seeks to serve on Riccio and Cullen are not warranted. Fourteen of the twenty-five interrogatories require the defendants to explain "with specificity and detail what [they] were doing in the video" at various time intervals. *See* Pl.'s Second Set of Interrog. to Def. David Riccio, Req.

---

[3] Rule 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Nos. 1-5, 13-21. Those requests are vague and cumulative in nature. Boudreau has not explained why he cannot obtain that information simply by viewing the video. To the extent he believes the defendants' previous statements contradict the video, he may so state in his response to the summary judgment motion or present such evidence at trial. Moreover, two of his requests seek written law enforcement policies and procedures regarding the use of a canine near a handcuffed suspect. *Id.*, Req. Nos. 6, 7. I already ruled that compelling the defendants to produce such information was not warranted because Cullen previously stated that he was unaware of any such policies, but he gave Boudreau a list of procedures pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), outlining the steps to obtain any such materials. *See* Ruling on Pending Mots. at 17. Finally, the remaining nine interrogatories require the defendants to give opinions regarding the BPD's decision to permit the canine to approach him and an explanation of their qualified immunity defense. Pl.'s Second Set of Interrog. to Def. David Riccio, Req. Nos. 8-12, 22-25. Although such information is relevant, the defendants have provided their arguments on the use of force and their qualified immunity defense in their supporting memorandum for their motion for summary judgment. Mem. in Supp. of Federal Defs.' Mot. for Summ. J., Doc. No. 72-1.

Based on the foregoing, Boudreau's motions to serve additional interrogatories on Riccio and Cullen are **DENIED**.

On June 5, 2019 and September 5, 2019, Boudreau filed two motions to compel Riccio and Cullen to provide additional and/or more sufficient answers to his previous set of interrogatories, which were served in March 2019. Pl.'s Mot. to Compel Def. David Riccio to Answer Interrog., Doc. No. 95; Pl.'s Mot. to Compel Def. Brendan Cullen to Answer Interrog.,

Doc. No. 104. Boudreau complains that most of the defendants' responses are "untruthful" or contradict the video evidence. Pl.'s Mot. to Compel Def. David Riccio to Answer Interrog. at 2-6; Pl.'s Mot. to Compel Def. Brendan Cullen to Answer Interrog. at 1-11. The fact that Boudreau believes there are discrepancies between the defendants' responses and other evidence does not warrant an order for another set of responses. Boudreau may present any such discrepancies in his response to the summary judgment motion to show a genuine issue of material fact or at trial. The only remaining interrogatory, Interrogatory No. 6, requires the defendants to provide a detailed analysis of the case in light of DHS policies and procedures regarding the use of police canines, which may or may not exist. Pl.'s Mot. to Compel Def. David Riccio to Answer Interrog. at 5; Pl.'s Mot. to Compel Def. Brendan Cullen to Answer Interrog. at 6. I conclude that this request is vague, cumulative, and unduly burdensome, and Boudreau has not shown why he cannot obtain any such policies and procedures himself. Therefore, the motions to compel Riccio and Cullen to provide supplemental responses to the interrogatories, are **DENIED**.

   III. <u>Motions for Default Judgment (Doc. Nos. 81, 90)</u>

Boudreau has filed two motions for default judgment against the defendants grounded in their failure to file an answer to the amended complaint (Doc. No. 22-1). Pl.'s Mots. for Default and Default J. (Doc. Nos. 81, 90). The defendants filed an opposition to the initial motion, contending that, after I ruled on their motion to dismiss (Doc. No. 36), Boudreau moved to extend the deadlines for discovery and dispositive motions (Doc. No. 51), which I granted, but Boudreau failed to request a new deadline for the defendants to file an answer. Federal Defs.' Opp'n to Pl.'s Mot. to Strike and Mot. for Default J. (Doc. No. 82) at 1-2. That was not

10

Boudreau's responsibility; by rule, the defendants had 14 days from denial of the motion to dismiss to file a responsive pleading. *See* Fed. R. Civ. P. 12(a)(4)(A). For the following reasons, the motion for entry of default and for default judgment will be **GRANTED** to the extent it seeks entries of default.

"Under Rule 55, when a defendant fails to file a timely answer or response to a complaint, the plaintiff must follow 'a two-step process for obtaining a default judgment.'" *United States v. Real Property Located at 120 Teriwood Street, Fern Park, Florida 32730*, 2017 WL 8640911, at *2 (E.D.N.Y. June 22, 2017) (quoting *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011)). First, the plaintiff must move for an entry of default under Rule 55(a). *Id.* Second, "[o]nce default has been entered, the plaintiff 'must apply to the court for a default judgment.'" *Id.* (quoting Fed. R. Civ. P. 55(b)(2)).

Unless the defendants file an answer to the amended complaint (Doc. No. 22-1) within **twenty-one (21) days from the date of this Order**, Boudreau may renew his motion for default judgment.

IV. <u>Motion to Compel Production of Evidence (Doc. Nos. 100, 108)</u>

On June 19, 2019, Boudreau moved to compel the defendants to produce a copy of the police body camera video of BPD Sergeant Ramey from the night of the incident. Mot. to Compel, Doc. No. 100. He filed that motion after viewing another video showing Ramey positioned inside the restaurant during the canine incident. *Id.* Boudreau contends that the defendants "had an obligation to produce responsive videos in their possession, custody, or control." *Id.* He certifies that he sent defense counsel a letter regarding this material on May 23, 2019, and defense counsel has not responded. *Id.* at 2.

11

On September 11, 2019, Boudreau filed a motion for leave to serve a subpoena on the BPD "by alternative service." Mot. to Serve Subpoena by Alternative Service, Doc. No. 108. Through the proposed subpoena, he seeks several forms of evidence, including police radio and dispatch logs, telephone recordings, and more body camera footage. *Id.* at 1. Boudreau claims that this evidence "will depict the alleged search" on December 29, 2015 in the hours leading up to the dog bite and any discussions regarding the use of the canine. *Id.* at 2.

"Where a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'" *In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)); *see also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989). "Because 'the Federal Rules . . . are to be construed liberally in favor of discovery' . . . 'the party resisting discovery bears the burden of showing why discovery should be denied.'" *In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *1 (quoting *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn. 2004), and *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009)).

Boudreau alleges that Ramey was positioned inside the restaurant during the canine incident and that Ramey was wearing a body camera that was turned on. *See* Mot. to Serve Subpoena by Alternative Service, Doc. No. 108, at 2. Boudreau is entitled to Ramey's police body camera as he requests. However, Boudreau has not explained why the other evidence requested in the proposed subpoena would not be cumulative in light of the other materials already produced and disclosed. Thus, the motion to compel the production of the video and motion to serve a subpoena are **GRANTED in part and DENIED in part**.

12

V. Motion to Compel Defense Counsel to Communicate with the Plaintiff (Doc. No. 101)

On June 19, 2019, Boudreau filed a motion to compel defense counsel to respond to various letters Boudreau sent regarding discovery requests. Mot. to Compel Defense Counsel to Communicate, Doc. No. 101. Boudreau also contends that the defendants sent an electronic copy of their summary judgment motion to him on a CD-ROM, but Boudreau is not able to access the content of the CD-ROM because it is password-protected. *Id.*

Because discovery has now closed, and the defendants may amend their motion for summary judgment based on the orders in this ruling and in my August 22, 2019 ruling, Boudreau's motion is **DENIED as moot**. In the event the defendants decide not to amend their motion for summary judgment, they shall provide Boudreau with either (a) the password to unlock the content of the CD-ROM; or (b) a new CD-ROM with the electronic exhibits that is not password-protected; or (c) a hard copy of the summary judgment motion and exhibits.

VI. Motion for Clarification of the Court's August 22, 2019 Order (Doc. No. 103)

Boudreau has moved for clarification on my previous ruling regarding defendant Smith's responses to Request for Admissions Numbers 17 and 18 in Boudreau's motion to determine the sufficiency of Smith's Answers or Objections. Pl.'s Mot. to Determine Sufficiency (Doc. No. 62) at 7-8. On September 10, 2019, the defendants filed a response to that motion, stating that they have since filed supplemental responses to Request Numbers 17 and 18 in accordance with my previous order. Defs' Resp. to Pl.'s Mot. for Clarification (Doc. No. 106). Therefore, Boudreau's motion is **DENIED as moot.**

VII. Motions Regarding the Pending Summary Judgment Motion (Doc. Nos. 80, 83-87, 89, 97, 99, 107)

Boudreau has filed two motions to strike the defendants' qualified immunity defense from their motion for summary judgment because they never filed an answer to the amended complaint preserving the defense. Pl.'s Mot. to Strike Defs.' Qualified Immunity Defense (Doc. Nos. 80, 89). Although that argument has merit, I expect the defendants to file an answer within 21 days, and I expect that answer to include a qualified immunity affirmative defense. Accordingly, the motions to strike the qualified immunity defense are **DENIED**, without prejudice.

Boudreau next moves to delay ruling on the summary judgment motion until after discovery is completed. Pl.'s Mot. to Delay Ruling on Defs.' Summ. J. Mot. (Doc. No. 83) Because I ordered additional discovery in my previous ruling (Doc. No. 102) and in this ruling, I will **GRANT** Boudreau's motion. After the defendants file their answer to the amended complaint and comply with all final discovery orders, they shall file a notice with the court indicating whether they wish to amend their motion for summary judgment. If so, Boudreau will have an opportunity to file an amended opposition to the motion, and the defendants will have an opportunity to file an amended reply.

Next, Boudreau has filed four motions to strike the declarations of defendants Smith, Riccio, and Cullen and BPD Officer Kaufman as exhibits in support of the defendants' motion for summary judgment. Pl.'s Mot. to Strike Decl. of Jay Kaufman (Doc. No. 84); Pl.'s Mot. to Strike Def. Brendan Cullen's Decl. (Doc. No. 85); Pl.'s Mot. to Strike Def. Doug Smith's Decl. (Doc. No. 86); Pl.'s Mot. to Strike Def. David Riccio's Decl. (Doc. No. 87). In support of his motions, Boudreau contends that several of the statements made in the declarations (1) contain conclusory legal opinions, (2) contradict the video evidence, (3) are irrelevant to the sole

remaining excessive force claim, and/or (4) are based on information that is hearsay or beyond the scope of the declarant's personal knowledge.

"A motion to strike under Federal Rule of Civil Procedure 12(f) seeks to remove 'any redundant, immaterial, impertinent, or scandalous matter.'" *Mueller v. Towers*, 2010 WL 4365771, at *2 (D. Conn. Oct. 25, 2010) (quoting Fed. R. Civ. P. 12(f)). "A court may strike portions of a declaration that are not based on the declarant's personal knowledge, that contain inadmissible hearsay or that make generalized conclusory statements." *Id.* (citing *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999)). It is not the appropriate vehicle, however, to contest the credibility of a witness or show that the testimony is contradicted by other evidence. *See id.* (citing *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 33 (D.D.C. 2002)).

With respect to Officer Kaufman's declaration, Boudreau objects to paragraphs 11 and 14 on the grounds that they contain conclusory statements and that they contradict the video evidence. In paragraph 11, Kaufman states:

> I do recall that the canine involved in the track of Mr. Boudreau on December 29, 2015 approached Mr. Boudreau within the Cue & Brew . . . after he had been located, apprehended and handcuffed within that establishment; no federal law enforcement officer present and/or involved in the location or apprehension of Mr. Boudreau that evening was in a position to intervene or prevent the canine from approaching Mr. Boudreau in the Cue & Brew.

Decl. of Jay Kaufman, Defs.' Ex. F (Doc. No. 72-8) ¶ 11. In paragraph 14, Kaufman states:

> No federal law enforcement officer present and/or involved in the location or apprehension of Mr. Boudreau on December 29, 2015 was in a position to intervene or prevent the brief contact made by the canine with Mr. Boudreau's leg within the Cue & Brew . . . .

*Id.* at ¶ 14. I agree that these statements contain general conclusions, which are inappropriate for sworn declarations. But it is unnecessary to strike those statements because I can afford them

15

only the weight they deserve.  Boudreau's motion to strike Kaufman's declaration is **DENIED as moot**.

I also conclude that Riccio's statement in paragraph 47 of his declaration that he "was not in a position to intervene or to prevent the Branford Canine from approaching and biting [Boudreau];" Decl. of David Riccio, Defs.' Ex. D (Doc. No. 72-6) ¶ 47; need not be stricken for the same reason.  The statement is conclusory, but I can treat it as such.  Boudreau's motion to strike Riccio's declaration is **DENIED as moot**.

I also conclude that no statements in Smith's declaration (Doc. No. 72-7) and Cullen's declaration (Doc. No. 72-5) need be stricken.  Boudreau contends that many of those statements are irrelevant and based on information that is either hearsay or beyond the scope of the defendants' personal knowledge.  Again, Boudreau is correct in certain of those contentions, and I will treat those statements accordingly; but it is unnecessary to strike them.  Boudreau's motions to strike Cullen's declaration and Smith's declaration are **DENIED as moot**.

Boudreau has also filed a motion to file an "oversized response memorandum" to the defendants' summary judgment motion.  Pl.'s Mot. for Leave to File Oversized Resp. Mem. (Doc. No. 97).  Three days later, he filed his response memorandum, which consists of 145 pages plus exhibits.  Pl.'s Opp'n to Federal Defs.' Mot. for Summ. J.  I **DENY** Boudreau's motion.  Boudreau shall file a concise memorandum of law within 30 days of the defendants' decision whether to file a substitute motion for summary judgment.

Boudreau next moves to seal one exhibit he submitted with his opposition memorandum, Exhibit 12, which contains the record of the medical treatment he received from the dog bite on December 29, 2015.  Pl.'s Mot. to Seal Pl.'s Medical Records Ex. (Doc. No. 99).  I will **GRANT**

Boudreau's motion to seal the records. However, it is not clear from his motion or his opposition memorandum whether Boudreau sent a copy of these records to the defendants, who are entitled to rely on such evidence for purposes of a reply memorandum. Therefore, if Boudreau has not already provided Exhibit 12 to the defendants, he is hereby ordered to do so within twenty-one (21) days from the date of this order.

Finally, Boudreau has filed a motion to extend discovery and supplement his written opposition to the motion for summary judgment. Mot. to Extend Disc. and Permission to Supplement Opp'n to Summ. J., Doc. No. 107. Because this case has already been pending for over two years and has been in discovery for one year, I will not extend discovery in this case. Moreover, as shown below, Boudreau will have an opportunity to file a new opposition to the defendants' motion after the defendants comply with the final discovery orders. Therefore, the motion to extend discovery is **DENIED**.

## ORDERS

Cullen's motion for a protective order (Doc. No. 88) is **GRANTED in part and DENIED in part**. Boudreau's motions to serve additional interrogatories and/or compel more sufficient answers (Doc. Nos. 79, 92, 95, 104) are **DENIED**. The motions for default judgment (Doc. Nos. 81, 90) will be treated as motions for entry of defaults and **GRANTED**. The motion to compel production of the police body camera video (Doc. No. 100) and motion to serve a subpoena by alternative service (Doc. No. 108) are **GRANTED in part and DENIED in part**. The motion to compel defense counsel to communicate with Boudreau (Doc. No. 101) is **DENIED** as moot. The motion for clarification of the August 22, 2019 Order (Doc. No. 103) is **DENIED** as moot. The motions to strike the qualified immunity defense (Doc. Nos. 80, 89) are

17

**DENIED** without prejudice.  The motion to delay ruling on the summary judgment motion (Doc. No. 83) is **GRANTED**.  The motions to strike Officer Kaufman's declaration (Doc. No. 84), Riccio's declaration (Doc. No. 87), Smith's declaration (Doc. No. 85), and Cullen's declaration (Doc. No. 86) are **DENIED** as moot.  The motion to file an oversized response memorandum (Doc. No. 97) is **DENIED**.  The motion to seal Exhibit 12 (Doc. No. 99) is **GRANTED**.  The motion to extend discovery and supplement the opposition to the summary judgment motion (Doc. No. 107) is **DENIED.**

To better clarify the record, I hereby incorporate some of the orders from my August 22, 2019 ruling and combine them with the orders from this ruling below.

**Within twenty-one (21) days from the date of this Order:**

(1)     Cullen shall disclose to Boudreau his own cell phone records from December 29, 2015.  *See* Doc. No. 102 at 15–16; Doc. No. 66.

(2)     Cullen shall file amended responses to Request Numbers 1, 4, 7, 8, 9, 20, 23, 24, 25, 29, 54, 55, 56, and 57 in Boudreau's second request for admissions (Doc. No. 88-1).

(3)     The defendants shall file an answer to the amended complaint (Doc. No. 22-1) and include any affirmative defenses.

(4)     The defendants shall file a notice with the court stating their compliance with the foregoing discovery orders and indicating whether they wish to amend their motion for summary judgment (Doc. No. 72).  If the defendants wish to amend their motion, I will deny the pending motion for summary judgment without prejudice and direct the defendants to refile their motion within thirty (30) days.  I will then permit Boudreau thirty (30) days to file his opposition memorandum and the defendants another fourteen (14) days to file a reply.  If the defendants do

not wish to amend their motion, I will direct Boudreau to file a substitute opposition to the motion within thirty (30) days from the date of my order.

      (5)     Boudreau shall send defense counsel a copy of Exhibit 12 (Doc. No. 98-2) if he has not already done so.

**Discovery is now CLOSED. Any additional discovery motions will be denied.**

So ordered.

Dated at Bridgeport, Connecticut, this 22d day of October 2019.

                                            /s/ STEFAN R. UNDERHILL
                                            Stefan R. Underhill
                                            United States District Judge