UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON BOUDREAU,
    Plaintiff,

v.                                              Case No. 3:17-cv-589 (SRU)

SMITH, et al.,
    Defendants.

## RULING ON PENDING MOTIONS

On April 10, 2017, the plaintiff, Jason Boudreau, a federal inmate currently confined at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, filed a civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against the town of Branford, Connecticut, the Branford Police Department ("BPD"), five members of the BPD, and four members of the United States Department of Homeland Security ("DHS") for using excessive force during his arrest, in violation of his Fourth Amendment protection against unreasonable seizures. All claims against the town of Branford, the BPD, and all BPD officers have since been dismissed. *See* Initial Review Order, Doc. No. 9, at 13; Stipulation of Dismissal, Doc. No. 39; Ruling on Mot. to Dismiss, Doc. No. 50. The only remaining claim in this case is a Fourth Amendment claim for excessive force against DHS officers Doug Smith ("Smith"), David Riccio ("Riccio"), and Brendan Cullen ("Cullen") (collectively, "the Defendants"),[1] based on their failure to intervene when BPD officers permitted a police canine named "Joker" to approach Boudreau while he was handcuffed and detained, after which Joker bit Boudreau on the leg. *See* Ruling on Mot. to Dismiss, Doc. No. 50, at 15.

---

[1] On May 28, 2019, Boudreau filed a notice of voluntary dismissal of his claims against James Bentz, the fourth DHS officer. *See* Mot. for Voluntary Dismissal, Doc. No. 93.

The following motions, among others, are currently pending:

Motion to Compel Production of Documents from the Defendants and DHS, Doc. No. 109;

Motion for Sanctions for Spoliation of Evidence, Doc. No. 110;

Motion to Allow Production of *Touhy* Requests Related to the Defendants' Missing Text Messages, Doc. No 117.

For the following reasons, I will **deny** the Motion to Compel (doc. no. 109), defer ruling on the Motion for Sanctions (doc. no. 110), and **deny** in substantial part and **grant** in part the Motion to Allow Production of *Touhy* Requests Related to the Defendants' Missing Text Messages (doc. no. 117).

I.  Motion to Compel (Doc. No. 109)

Earlier in this case, I ruled that Cullen need not produce information regarding written law enforcement policies and procedures because Cullen, who previously stated that he was unaware of any such policies, had already given Boudreau a list of procedures outlining the steps to obtain any such materials and so had complied with *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *See* Ruling, Doc. No. 102, at 17; Ruling, Doc. No. 112, at 9. Boudreau subsequently proceeded to request such materials from DHS in accordance with those instructions, and DHS responded to his requests. *See* Mot. to Compel, Doc. No. 109 (including DHS's responses).

In this Motion to Compel, Boudreau asks me to compel the Defendants and DHS to produce certain documents that he has requested pursuant to *Touhy*. *See id.* at 1. Specifically, Boudreau asserts as inadequate DHS's responses to three of his requests. *See id.* In their Objection to the Motion to Compel, the Defendants argue that DHS has responded to Boudreau's

*Touhy* requests and that they—who are being sued in their individual capacities—do not have the information sought. *See* Obj. to Mot. to Compel, Doc. No. 121.

"Where a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'" *In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)); *see also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989). Because the Federal Rules are to be construed liberally in favor of discovery, the burden falls on the party resisting discovery to show why discovery should be denied. *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn. 2004); *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).

All "[m]otions relative to discovery," including motions to compel, "are addressed to the discretion of the [district] court." *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

A. <u>Request No. 1</u>

In "Request 1," Boudreau sought DHS policies and procedures regarding the use of canines, uses of force, and reports of uses of force, particularly those that result in injury. *See* Mot. to Compel, Doc. No. 109, at 1. DHS responded both that ICE's use of force policy was privileged as law enforcement sensitive and that "ICE does not employ the use of canines." *Id.* at 2. I will not compel DHS to produce law enforcement sensitive materials that are unlikely to be relevant to the remaining question in this case concerning the Defendants' failure to intervene

3

when the canine Joker approached and then bit Boudreau. The Motion to Compel is **DENIED** with respect to Request No. 1.

      b. Request No. 5

In his Request No. 5, Boudreau sought all documents related to any complaints made by Boudreau regarding the incident on December 29, 2015. Mot. to Compel, Doc. No. 109, at 3. DHS responded that the ICE Office of Professional Responsibility had no such complaints and that no internal investigation had been conducted. *Id.*

Boudreau asserts that DHS received his letters complaining about the incident and must have investigated his claims. *Id.* He points out that his January 12, 2016 letter to DHS, which the Defendants attached to their Motion to Dismiss, asserted his intent to pursue litigation and a claim under the Federal Tort Claims Act ("FTCA"). *Id*; *see also* Boudreau Letter, Ex. G to Mot. to Dismiss ("Boudreau Letter"), Doc. No. 36-8, at 4. In a declaration dated October 23, 2017, attached to the Defendants' Motion to Dismiss, Jonathan Kaplan, Associate Legal Advisor of the Office of Principal Legal Advisor for ICE in the District Court Litigation Division, stated that his office was not aware of this letter until October 20, 2017, when he received an email from "the ICE Homeland Security Investigations field office in Warwick, Rhode Island," indicating that it had received Boudreau's January 12, 2016 letter. Decl. of Jonathan Kaplan, Ex. G to Mot. to Dismiss ("Kaplan 1st Decl."), Doc. No. 36-8, at 2. Attorney Kaplan explained that ICE did not review the letter because it failed to state a "claim for money damages in a sum certain" as required by 28 C.F.R. § 14.2(a). *Id.* In a second declaration dated November 30, 2017, also attached to the Defendants' Motion to Dismiss, Attorney Kaplan represented that he had received a November 7, 2017 letter from Boudreau about the incident on December 29, 2015,

4

expressing an intent to sue under the FTCA for $250,000 in compensatory damages and $400,000 in punitive damages. *See* Decl. of Jonathan Kaplan, Ex. J to Mot. to Dismiss ("Kaplan 2d Decl."), Doc. No. 36-11, at 2–3. Kaplan's declaration indicates that the District Court Litigation Division would adjudicate Boudreau's claim on or before June 29, 2018. *Id.* Boudreau maintains that some investigation must have taken place in order to deny his administrative claims. *See* Mot. to Compel, Doc. No. 109, at 3.

As I stated in my ruling dated August 22, 2019, I cannot compel the production of documents that do not exist. Ruling, Doc. No. 102, at 19 (citing *Grayson v. General Electric Co.*, 2016 WL 1275027, at *2 (D. Conn. Apr. 1, 2016)). The fact that Boudreau may not believe DHS's assertion that those documents do not exist is not a sufficient basis for me to compel DHS's production of documents. *See Pugliese v. United Technologies Corp.*, 2007 WL3124726, at *3 (D. Conn. Oct. 23, 2007). Accordingly, the Motion to Compel is **DENIED** with respect to Request No. 5.

    c. Request No. 6

In his sixth request, Boudreau seeks "[a]ll DHS personnel files" for the Defendants. Mot. to Compel., Doc. No. 109, at 3. Boudreau represents that his *Touhy* letter explained that he sought documents related only to "complaints filed against the Defendants," any disciplinary-related documents, and any documents regarding "the use of canines in locating and apprehending individuals, as well as any documents related to training that the Defendants received regarding safety and well being of arrestees." *Id.* at 4. DHS responded that the Defendants' personnel files are protected by the Privacy Act, 5 U.S.C. § 552a, and are not subject to disclosure. *Id.* at 3.

5

Although training and complaints of excessive force may be relevant to the remaining claim, Boudreau's request for document production was overbroad. A request for all disciplinary reports or complaints of excessive force concerning the Defendants is not necessarily relevant to this case, which involves only the narrow issue concerning a failure to intervene in the circumstance of an approaching canine. Further, Boudreau has already had the opportunity to request admissions from the Defendants regarding training and past complaints or lawsuits related to excessive force. *See* Ruling, Doc. No. 102, at 5, 9, 19; *see also Crenshaw v. Herbert*, 409 F. App'x 428, 430 (2d Cir. 2011) (affirming district court's ruling denying discovery of a police officer's personnel records based on defendant's affirmation that his personnel file contained no relevant records). The discovery deadline was extended several times to facilitate Boudreau's discovery efforts. The request for information from DHS's personnel files of the Defendants is cumulative of information that Boudreau has already had an opportunity to obtain through discovery. The Motion to Compel is **DENIED** with respect to Request No. 6.

II.  Motion for Sanctions (Doc. No. 110) and Motion to Allow Production of *Touhy* Requests Related to the Defendants' Missing Text Messages (Doc. No. 117)

In his Motion for Sanctions, Boudreau seeks monetary sanctions, an adverse inference, and an order striking pleadings due to the Defendants' asserted destruction of Cullen's text messages from December 29, 2015. Mot. for Sanctions, Doc. No. 110, at 1, 14–18.

I have previously ordered Cullen to disclose his own cell phone records from December 29, 2015. *See* Ruling, Doc. No. 102, at 15–16; Ruling, Doc. No. 112, at 18. I agreed with Boudreau that records of calls or text messages were "relevant to the remaining issue of whether Cullen and/or the other defendants failed to intervene when Branford police officers permitted

6

the dog to approach Boudreau, who was already handcuffed." Ruling, Doc. No. 102, at 15. I also concluded that Cullen's text messages could be relevant to the officers' states of mind, which could weigh on the issue of excessive force. *Id.*

On September 6, 2019, Cullen provided Boudreau with a telephone log from the night of December 29, 2015, but the Defendants advised Boudreau that Cullen could not obtain text message information due to a switch in carrier in February 2016 that resulted in loss of the text messages. *See* Defs.' Notice, Doc. No. 115, at 1; Obj. to Mot. for Sanctions, Doc. No. 111, at 10.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted). "The party seeking discovery sanctions on the basis of spoliation must show by a preponderance of the evidence: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)). Boudreau, as the party seeking sanctions, bears the burden of establishing the elements of spoliation. *See id.*

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). After

concluding that the party charged with spoliation was subject to an obligation to preserve the evidence, the court "must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence." *Id.*

Pursuant to Federal Rule of Civil Procedure 37(b)(2), a district court may impose sanctions for spoliation in violation of a court order. *See West*, 167 F.3d at 779. Further, a district court has broad discretion in determining the proper sanction for spoliation. *See id.* However, Federal Rule of Civil Procedure 37(e), amended as of December 1, 2015, provides that a court may impose the harsh sanction of an adverse inference or default judgment on a party for failing to preserve relevant electronically stored information ("ESI") only if the court finds that the spoliating party acted with "intent to deprive another party of the information's use in the litigation[.]" Fed. R. Civ. P. 37(e)(2); *see also Cruz v. G-Star Inc.,* 2019 WL 4805765, at *8 (S.D.N.Y. Sept. 30, 2019).

Boudreau contends that the Defendants had notice of their duty to preserve evidence relevant to this litigation when they received his January 12, 2016 letter, which indicated his intent to file an action alleging excessive force and negligent failure to intervene based on the events of December 29, 2015. *See* Mot. for Sanctions, Doc. No. 110, at 1–2; Boudreau Letter, Doc. No. 36-8, at 4.

The Defendants assert that any obligation to preserve evidence did not arise until Fall 2017, after Boudreau served his *Bivens* complaint on the Defendants.[2] Obj. to Mot. for Sanctions, Doc. No. 111, at 7, 12. The Defendants argue that before they were served with the complaint, they did not have notice of Boudreau's pending excessive force claim based on their

---

[2] Boudreau filed his federal complaint on April 10, 2017, and service on defendants was complete as of October 20, 2017. *See* Obj. to Mot. for Sanctions, Doc. No. 111, at 7.

failure to intervene. *Id.* at 7. The Defendants maintain that Boudreau's letter dated January 12, 2016 indicated that his excessive force claim was based on the Branford Officer's "gestures and commands" for the canine to bite Boudreau while he was handcuffed. *Id.* at 8. The Defendants argue that, without notice of Boudreau's failure to intervene claim against them, they could not have known the relevance of cell phone records from the period of time prior to the canine Joker's approach and the Branford officer's command to bite Boudreau. *Id.* at 8, 12. Defendants represent that a Notice to Preserve Documents and ESI was issued "as soon as they were aware of the pending litigation[.]" *Id.* at 15; *see also* Preservation Notice, Doc. No. 111-2.

It is not disputed that the Defendants received notice that Boudreau had brought an action, including excessive force claims, in September 2017, when Riccio and Cullen were served. Nevertheless, actual and possible future litigation represent "catalysts of equal strength for the preservation of evidence." *Bagley v. Yale Univ.*, 318 F.R.D. 234, 240 (D. Conn. 2016). The contents of Boudreau's January 12, 2016 letter to the DHS field office indicates Boudreau's intent to pursue litigation against the DHS officers involved in his December 2015 arrest. *See* Boudreau Letter, Doc. No. 111-1, at 1. Attorney Kaplan has indicated that the District Court Litigation Division, which is responsible for defensive civil litigation matters and reviewing administrative tort claims, was not aware of Boudreau's letter until October 20, 2017. However, the ICE Investigations field office could have easily forwarded the letter to the District Court Litigation Division. *See* Kaplan 1st Decl., Doc. No. 36-8, at 1–2. Boudreau's January 12, 2016 letter states his intent to bring excessive force and negligent failure to intervene claims against DHS and its agents; Boudreau complains that "[y]our agents did absolutely nothing to intervene or prevent the dog's attack." Boudreau Letter, Doc. No. 111-1, at 1. Thus, the Defendants and

9

DHS should have understood that Boudreau would assert claims based on the Defendants' failure to intervene and should have known that their obligation to preserve evidence extended to cell phone records relevant to the time period prior to the approach and bite.

Because the letter attached to the Motion to Dismiss and the Objection to the Motion for Sanctions is not date stamped and its envelope is not included as an exhibit, I cannot determine from either the record evidence or Boudreau's submissions when the ICE Investigations field office received this letter. *See* Boudreau Letter, Doc. No. 36-8, at 4; Boudreau Letter, Doc. No. 111-1, at 1. Further, Boudreau has adduced no evidence that the February 2016 telephone carrier switch was undertaken to deprive him of cell phone records for use in this litigation. Indeed, it is unlikely that Boudreau's letter on January 12, 2016 spurred a Department-wide phone carrier switch.

However, Boudreau has filed his Motion to Allow Production of *Touhy* Requests to obtain information from DHS related to Cullen's missing text messages. Mot. for *Touhy* Requests, Doc. No. 117, at 1–2. Boudreau makes the following twelve requests: (1) all DHS policies related to retention of documents and ESI; (2) all documentation related to the preservation of evidence after the September 2017 issuance of DHS's Notice of Preservation Evidence letter; (3) all documents relating to the search for text messages from the Defendants' cell phones; (4) all documents pertaining to the cell phone carrier switch in February 2016; (5) all documents pertaining to data backup/retrieval procedures when a DHS employee receives a new phone; (6) all retention policies for text messages on DHS employee phones; (7) all documents related to the disposition of any text messages sent or received on Smith or Riccio's cell phones on December 29, 2015; (8) all documents related to steps taken to preserve evidence

after issuance of the September 2017 letter regarding preservation of evidence; (9) all documents and ESI related to any action the Chief Information Officer took to preserve and/or recover evidence related to this case; (10) all documents and ESI related to any preservation or recovery of evidence by DHS or the Defendants pertaining to plaintiff's criminal case; (11) all emails sent or received by agency counsel Kaplan pertaining to Boudreau's letter dated January 12, 2016; and (12) all documents relating to the "Widepoint portal" that pertains to cell phone records, including, but not limited to, photos, text messages, videos, email, and call logs. *Id.* at 4–7.

Requests (1), (2), (3), (5), (7), (8), (9), (10), (11), and (12) are beyond the scope of the question concerning the intent to switch telephone carriers in 2016. However, Boudreau seeks relevant information in Request (4) for documents pertaining to the cell phone carrier switch in February 2016 and in Request (6) for documents concerning retention policies for text messages on DHS employee phones.[3] I will afford Boudreau leave to serve these requests on DHS.

The information regarding the receipt date of the letter dated January 12, 2016 is within the domain of DHS, and it can likely be determined by requesting a declaration from the individual with whom Attorney Kaplan communicated by email. Accordingly, I will instruct the Defendants to provide Boudreau with that information within two weeks of this order.

In addition, while Cullen has produced a telephone log from the night of December 29, 2015—and represents that he could not obtain text message information due to a switch in carrier in February 2016—it is not clear from the Defendants' submissions that Cullen or the Defendants has searched the cloud for back-ups of those text messages. Thus, I instruct the Defendants to search the cloud for back-ups of those text messages, and, if they are found, to

---

[3] ICE has agreed to query for documents relating to its transition from Sprint to Verizon in February 2016. *See* Obj. to Mot. to Compel, Doc. No. 121, at 5.

provide them to Boudreau. If there are no such back-ups, the Defendants are instructed to file an affidavit explaining its efforts within two weeks from the date of this order.

Boudreau may file a supplemental memorandum based on the information he receives from DHS by March 2, 2020. I will then consider whether Boudreau has proved spoliation and whether sanctions are warranted.

Boudreau's requests for information relevant to text messages or searches for text messages from the cell phones of Smith and Riccio are irrelevant to this motion for sanctions regarding Cullen's lost text messages. I will not order disclosure of any cell phone records from the cell phones of Smith or Riccio because discovery is now closed. Any further discovery orders will be denied. Thus, Boudreau's Motion to Allow *Touhy* Requests is **DENIED** in substantial part and **GRANTED** in part.

## Conclusion

For the foregoing reasons, Boudreau's Motion to Compel (doc. no. 109) is **DENIED**. His Motion to Allow Production of Touhy Requests Related to Defendants' Missing Text Messages (doc. no. 117) is **DENIED** in substantial part and **GRANTED** in part. And I will not yet rule on his Motion for Sanctions (doc. no. 110).

Within two weeks of this order's filing date, the Defendants should provide Boudreau with information regarding the date of the receipt of the letter dated January 12, 2016. And within two weeks of this order's filing date, the Defendants shall either provide Boudreau with electronic back-ups of Cullen's text messages from the night of December 29, 2015 or file an affidavit explaining their efforts—and failure—to obtain those text messages.

Boudreau may file a supplemental memorandum based on the information he receives from DHS in response to his *Touhy* requests by **March 2, 2020**.  **All future discovery requests will be denied.  Discovery is closed.**

SO ORDERED at Bridgeport, Connecticut this 3d day of February 2020.

<u>STEFAN R. UNDERHILL</u>
/s/ Stefan R. Underhill
United States District Judge
